Anthony J. SCHERER, Jr., Plaintiff-
Appellant,

v.

Thomas BRENNAN and Nick Noack,
Defendants-Appellees.

No. 15961.

United States Court of Appeals
Seventh Circuit.

June 21, 1967.

Rehearing Denied July 14, 1967.

Theodore R. Sherwin, Chicago, Ill., for appellant.

Morton Hollander, Chief, Appellate Section, Alan S. Rosenthal, Atty., Department of Justice, Washington, D. C., Edward V. Hanrahan, U. S. Atty., Chicago, Ill., Barefoot Sanders, Asst. Atty. Gen., Martin Jacobs, Atty., Department of Justice, Washington, D. C., for appellees.

Before DUFFY, Senior Circuit Judge, and KNOCH and SWYGERT, Circuit Judges.

DUFFY, Senior Circuit Judge.

Plaintiff seeks to recover damages in the sum of $100,000 because of alleged trespass by defendants on plaintiff's property, and the alleged unlawful interference with plaintiff's right to have access to and to possess and occupy his. place of residence. The trial court granted a motion for summary judgment in favor of defendants and against plaintiff.

On October 7, 1964, plaintiff resided at 3010 Orchard Place, Des Plaines, Illinois, which is immediately adjacent to

O'Hare Airport, near Chicago. On that date, when plaintiff returned to his home, he saw two men seated in an automobile parked on his property. The two men identified themselves as agents of the Alcohol and Tobacco Tax Unit, United States Treasury Department, and stated that they had been assigned to guard the President of the United States who, on that date, was staying at the nearby O'Hare Inn; that they were directed to keep plaintiff under surveillance as long as the President remained at the O'Hare Inn. They also told plaintiff that he could enter his home only if the agents were permitted to enter with him. Plaintiff told the agents to leave, and he refused to permit them to enter his place of residence.

Plaintiff was a licensed dealer under the National Firearms Act and the Federal Firearms Act. The agents knew that plaintiff had, in his home, a variety of firearms and ammunition therefor, including military rifles.

The rear window of plaintiff's home was less than three hundred yards from the O'Hare Inn. Plaintiff admitted to the agents that " * * * it would be an easy rifle shot for any military model firearm."

In discussing the cannon which the plaintiff kept in his garage, plaintiff stated to the agents that it was a 25 mm Finnish cannon and the projectile could probably penetrate a concrete wall.

The agents urged plaintiff to either permit them to enter his residence to take custody of his firearms or to leave the area and take advantage of their offer of a free room at the nearby Flying Carpet Motel for the period the President would be at the O'Hare Inn. Plaintiff declined.

Agent Brennan was acquainted with the plaintiff. He previously had investigated him in connection with the sale by plaintiff of two or more submachine

guns. He also knew that plaintiff had been arrested by the Chicago police at the O'Hare Field in 1958 while in possession of a 20 mm Solothurn cannon.[1]

After several hours of discussion, and a visit to a friend's home, plaintiff succeeded in jumping through a window opening in his house, then closed and locked the window. The agents did not attempt thereafter to enter plaintiff's house, but maintained surveillance outside until 1:30 a. m. when they were relieved.

The answer to the complaint alleged that at the time and place of events complained of, defendants acted within the scope of their official duties as Special Investigators in connection with the protection of the President of the United States.

With the motion for summary judgment, the defendants filed four affidavits. One was by Michael W. Torina, the Special Agent in charge of the United States Secret Service Chicago office. This showed his request to the Acting Chief of the Alcohol and Tobacco Tax Division enforcement branch telling him that President Johnson was scheduled to arrive at O'Hare Field that evening, and requesting that they keep plaintiff under surveillance until the President departed.

An affidavit of the Acting Chief outlined his instructions to Agents Brennan and Noack and two other agents to assist in the "Presidential protection assignment and particularly to keep [the plaintiff] under surveillance."

In defendant Brennan's affidavit, he detailed instructions he had received and, among others, "to make every effort to keep Scherer [the plaintiff] away from his guns while the President was a guest at the O'Hare Inn." Defendant Noack's affidavit was similar to that of Brennan's. No affidavits were filed upon behalf of the plaintiff.

---

1. On oral argument, plaintiff's counsel represented that plaintiff had been exonerated on this charge. It does not appear from the record whether agent Brennan or his co-defendant had any knowledge of the final outcome of that proceeding.

We hold the District Court was correct in granting defendants' motion for summary judgment. It is clear that defendants were immune from this tort suit because their actions fell within the scope of their duties to protect the person of the President of the United States. Their actions were, at least, "within the outer perimeter" of their duties. Barr v. Matteo, 360 U.S. 564, 575, 79 S.Ct. 1335, 3 L.Ed.2d 1434, reh. den. 361 U.S. 855, 80 S.Ct. 41, 4 L.Ed.2d 93.

Title 18 U.S.C. § 3056 provides "Subject to the direction of the Secretary of the Treasury, the United States Secret Service, Treasury Department, is authorized to protect the person of the President of the United States * * *."

The affidavit of Michael Torina, the Special Agent in charge of the Secret Service, disclosed that under orders from the Secretary of the Treasury, he was authorized to call upon other agencies of the Treasury Department for assistance in carrying out protective assignments, and that on October 7, 1964, he did so.

It is well established that federal officials cannot be held personally liable in damages for an act committed within the general scope of their official authority and in performance of their official duties. Spalding v. Vilas, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780; Howard v. Lyons, 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454, reh. den. 361 U.S. 854, 80 S.Ct. 40, 4 L.Ed.2d 93.

As stated by the Supreme Court in Barr v. Matteo, supra, the principal reason for the immunity doctrine is to have government officials free to exercise their duties without fear of damage suits in respect to acts done in the course of those duties.

The official immunity rule has been held appropriate where the alleged tortious conduct was false imprisonment[2] and trespass.[3] It has been held that for the official act to be privileged, it is only necessary that the action bear some reasonable relation to and connection with the duties and responsibilities of the official. Norton v. McShane, 5 Cir., 332 F.2d 855, 858–859, cert. den. 380 U.S. 981, 85 S.Ct. 1345, 14 L.Ed.2d 274.

In Norton v. McShane, supra, tort actions had been commenced against federal officers. In that case, as here, plaintiffs failed to respond with counter-affidavits refuting the claim that defendants' acts were authorized. The Court stated at page 861, "It became incumbent on the plaintiffs, by · affidavits or otherwise as provided in Rule 56, supra, to set forth specific facts showing that there was a genuine issue for trial as to whether the defendants were acting within the line and scope of their official duties * * *." We approve of this statement in Norton.

On oral argument before this Court, plaintiffs sought to invoke a decision of the United States Supreme Court which had been handed down the day prior to the time when oral argument was held here. The case cited was Camara. v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed. 930 (June 5, 1967). There, the Court held that the Fourth Amendment requires a warrant for inspection of private premises by health inspectors unless the occupant consents thereto. We do not think Camara and its companion case, See v. Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943, are applicable.

In both *Camara* and *See*, the court held that convictions for refusing to admit the inspectors could not be sustained. In the instant case, plaintiff has not been charged with any offense.

2. Lang v. Wood, 67 U.S.App.D.C. 287, 92 F.2d 211, cert. den. 302 U.S. 686, 58 S.Ct. 48, 82 L.Ed. 530; Gregoire v. Biddle, 2 Cir., 177 F.2d 579, cert. den. 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363; Swanson v. Willis, 9 Cir., 220 F.2d 440.

3. Jones v. Kennedy, 73 App.D.C. 292, 121 F.2d 40, cert. den. 314 U.S. 665, 62 S.Ct. 130, 86 L.Ed. 532.

Further, there is nothing in either *Camara* or *See* to indicate that Barr v. Matteo, supra, has been overruled. The *Camara* case was not concerned with the official immunity doctrine.

Furthermore, we do not believe that there is any Supreme Court case requiring a warrant in an emergency situation. Here, the need to protect the President of the United States from possible physical harm would justify measures that might not be considered appropriate in routine health inspections.

The judgment of the District Court is Affirmed.