**Jesus ESTRADA et al., Plaintiffs,**

v.

**Carla HILLS, Secretary, Department of Housing and Urban Development, et al., Defendants.**

**No. 74 C 2418.**

United States District Court, N. D. Illinois, E. D.

Aug. 8, 1975.

---

**432**

Thomas J. Grippando, Chicago, Ill., Joyce Gradel (Senior Law Student), for plaintiffs.

Michael D. Stevenson, Asst. U. S. Atty., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

MARSHALL, District Judge.

The issue pending in this motion for summary judgment is whether defendants, who are federal Government officials, are immune from liability for money damages. The gravamen is that defendants maliciously and wilfully violated Department of Housing and Urban Development (HUD) regulations,[1] Illinois statutes, and Chicago ordinances with respect to the maintenance of a vacant HUD building in Chicago. Plaintiffs alleged that they notified defendants repeatedly of the hazardous condition of the building, but that defendants failed to take ameliorative action. Ultimately these violations allegedly led to a fire in the HUD building, causing the adjacent building, which housed plaintiffs, to burn down. Defendants are the Secretary of HUD, three Chicago area HUD officials, the Chicago Area Management Broker for HUD, and the Broker's owner, Milton Worsek. The Broker is under contract with HUD to perform maintenance work on HUD buildings. Plaintiffs seek monetary relief against all defendants except the Secretary of HUD, who was the only HUD defendant not sued personally. *See Poindexter v. Woodman,* 357 F. Supp. 443 (D.Kan.1973).

*Jurisdiction*

Plaintiffs originally brought this action in the Circuit Court of Cook County and defendants removed under 28 U.S.C. § 1442(a)(1) (1970). This statute permits federal officers sued or prosecuted to remove actions to federal court whether or not the federal court would have had original jurisdiction, and reflects a congressional judgment that federal officers should be able to defend any action in a federal forum. Section 1442(a)(1) is the sole basis of jurisdiction here. Accordingly, the appropriate source of relief, if any, is under Illinois law. Plaintiffs have alleged wilful and malicious conduct giving rise to common law tort liability. They also claim defendants violated Chicago municipal ordinances, and that they may bring an action to correct or abate the violation pursuant to *Ill.Rev.Stat.* ch. 24, § 11–13–15 (1973), which provides in part:

> . . . any owner or tenant of real property, within 500 feet in any direction or the property on which the building or structure in question is located who shows that his property or person will be substantially affected by the alleged violation, in addition to other remedies, may institute any appropriate action or proceeding . . . (3) to prevent any illegal act, conduct, business, or use in or about the premises, or (4) to restrain, correct, or abate the violation.
>
> . . .
>
> *   *   *   *   *   *
>
> An owner or tenant need not prove any specific, special or unique damages to himself or his property or any adverse effect upon his property from the alleged violation in order to maintain a suit under the foregoing provisions.

In addition, plaintiffs allege that defendants violated HUD regulations, which may create an enforceable duty under federal law. *Compare Brown v.*

---

1. These regulations are promulgated pursuant to the National Housing Act, 12 U.S.C. §§ 1701, 1715b (1970).

*Lynn,* 385 F.Supp. 986, 998 (N.D.Ill. 1974) *with Brown v. Housing Authority of Milwaukee,* 471 F.2d 63 (7th Cir. 1972).

■ Although this action sounds in tort, jurisdiction is not and need not be present under the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1970). In addition, federal question jurisdiction is not present, despite defendants' assertion to the contrary in the removal petition, because each plaintiff failed to allege that over $10,000 was in controversy.[2] *Zahn v. International Paper,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed. 2d 511 (1973).

### Statutory Waiver of Sovereign Immunity

■ According to 12 U.S.C. § 1702, defendants are amenable to suit. Section 1702 provides that the Secretary of HUD may be sued in his official capacity in connection with carrying out the provisions of the National Housing Act. This section is an effective waiver of sovereign immunity[3] and federal courts have the power to enforce the provisions of this Act against the federal government. *Baker v. F & F Investment Co.,* 489 F.2d 829 (7th Cir. 1973); *Brown v. Lynn,* 385 F.Supp. 986, 991 (N.D.Ill. 1974). Furthermore, § 1702 authorizes actions against government officials for money damages. *Baker v. F & F Investment Co., supra,* at 834.

■ Lest there be any doubt that defendants were carrying out provisions of the National Housing Act in doing the acts alleged, 12 U.S.C. § 1710(g) (1970) gives the Secretary of HUD the power to

> deal with, complete, rent, renovate, modernize, insure, or sell for cash or credit, in his discretion, any properties conveyed to him.

The purpose of this section is to enable the Secretary to acquire property in the event of a default or a foreclosure, so that he may market it, rehabilitate or otherwise dispose of it. *Manners v. Secretary of HUD,* 333 F.Supp. 829 (E.D.N. Y.1971). The ill-kept building at issue was HUD-owned, and in maintaining or failing to maintain it, defendants were acting under authority of the National Housing Act.[4]

### Procedural Background

After defendants removed the action, they filed a motion to dismiss. On December 6, 1974, that motion was denied, but we held that defendants Waner, Miller, and Ice, the Chicago Area HUD officials, were not liable for money damages. On January 7, 1975, upon reconsideration, we dismissed the prayer for monetary relief against Worsek also. On February 18, 1975, we modified these orders and held that defendants' motion to strike the claim for damages must be denied. This ruling rests on *Willingham v. Morgan,* 424 F.2d 200 (10th Cir. 1970), in which the court held that immunity from monetary relief is an affirmative defense which must be pleaded and factually proven and consequently should not be granted on a motion to dismiss. Now, defendants Waner, Miller, Ice and Worsek have submitted affidavits which, they claim, establish their immunity and entitle them to summary judgment on the issue of money damages. The test for immunity from money damages will be discussed first, and then the test will be applied to the defendant officials.

### The Test of Immunity

■■ The test for whether an official shall be immune from liability for money damages is not mechanical. It requires a careful inquiry into the na-

---

2. Plaintiffs Estrada, Diaz, Sanchez and Vaena have each asked for under $10,000, and their claims cannot be aggregated.

3. Section 1702 gives the Government's consent to be sued and does not waive the de-

fense of absolute immunity from liability for money damages which is the issue here.

4. This provision alone does not, however, create an enforceable duty to maintain HUD property in a safe condition.

ture of the alleged wrongful acts and the scope of the accused official's duties. The need for a careful inquiry stems from the competing policies underlying official immunity from money damages. From the perspective of the individual citizen, some compensatory remedy must be available to vindicate injury inflicted by government officials whose actions exceed their authority. From the perspective of the public interest in effective government administration, officials must be free to exercise their duties, especially discretionary duties, without having to defend their actions in court. The doctrine of immunity reflects the view that an official may be excessively hampered if he is subject to the tedious and potentially embarrassing process of litigation, regardless of the ultimate outcome. *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949).

■ Accordingly, the first step of the inquiry is deciding whether the acts complained of were within the outer perimeter of the defendant's official duties. If the actions were beyond this boundary, clearly the officer is not immune. But does immunity automatically attach if the official was acting within the outer perimeter of his authority?

The Seventh Circuit has answered this question affirmatively, and granted immunity upon a showing that the defendant official was acting within the scope of his authority. *Scherer v. Morrow*, 401 F.2d 204 (7th Cir. 1968) *cert. denied*, 393 U.S. 1084, 89 S.Ct. 868, 21 L. Ed.2d 777 (1969); *Scherer v. Brennan*, 379 F.2d 609 (7th Cir. 1967) *cert. denied*, 389 U.S. 1021, 88 S.Ct. 592, 19 L. Ed.2d 666 (1967).

The Second Circuit, on the other hand, imposes an additional test before granting immunity. In *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narc.*, 456 F.2d 1339 (2d Cir. 1972), the court held that federal officers are immune only if they were acting within the scope of their authority and if their duties were discretionary.[5] In developing the discretionary function test, the court relied upon language in *Barr v. Matteo, supra*, that officers are immune if they perform

> discretionary acts at those levels of government where the concept of duty encompasses the sound exercise of discretionary authority. 360 U.S. 564, 575, 79 S.Ct. 1335, 1341, 3 L.Ed.2d 1434.

In *Bivens*, the court specifically found that the officers, who were sued in connection with making arrests, were acting within their authority but were not exercising discretion. The court then held that the officers were not immune from money damages.[6]

*Doe v. McMillan*, 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed. 912 (1972), provides additional authority for applying the discretionary function test in this circuit. In *Doe*, the immunity of the Public Printer and the Superintendent of Documents for Congress was at issue. Plaintiffs alleged that these officials invaded their privacy by publishing certain derogatory documents for use in Congress and distribution elsewhere. The Court found that the officials were acting within the scope of their duties but that their duties were not discretionary. The Court held that official immunity does not automatically attach to any conduct expressly or impliedly authorized by law, unless the official was exercis-

---

5. Other circuits have also employed the discretionary function test. *Smith v. Losee*, 485 F.2d 334 (10th Cir. 1973); *Green v. James*, 473 F.2d 660 (9th Cir. 1973); *Carter v. Carlson*, 144 U.S.App.D.C. 388, 447 F. 2d 358 (1971); *Green v. Cauthen*, 379 F. Supp. 361 (D.S.C.1974).

6. The court instructed that defendants had available the defense of good faith if their good faith was reasonable. 456 F.2d at 1347. This circuit has adopted the *Bivens* analysis of the good faith defense. *Brubaker v. King*, 505 F.2d 534 (7th Cir. 1974). It has not adopted the *Bivens* analysis of the two-pronged immunity test.

ing a discretionary function. This rule is appropriate because effective government is not severely impaired if officials with ministerial duties are answerable in damages for failure to perform obligatory functions.

■ The *Doe* Court further indicated that when an official acting in a nondiscretionary capacity claims immunity, the Supreme Court

> has advised a discerning inquiry into whether the contributions of immunity to effective government in particular contexts outweigh the perhaps recurring harm to individual citizens. 412 U.S. 306, 320, 93 S.Ct. 2018, 2028, 36 L.Ed. 912.

Thus, the Court mandates the use of the discretionary function test, and a direct balancing of the policies underlying the immunity doctrine in the context of each fact situation. *See, e.g., Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) (qualified immunity granted to school board officials who exercise discretion); *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (qualified immunity granted to state National Guard officials due to their exercise of discretionary responsibilities).

Mindful of these principles, the first step here is to decide whether the HUD defendants were acting within the scope of their authority. Second, whether their functions were discretionary must be decided. Finally, the consideration of harm to the individual citizen must be balanced with threat to effective government in the context of this case.

### Scope of Authority

■ Initially, defendants contend that plaintiffs are estopped from arguing that defendants acted outside the bounds of their authority. This estoppel allegedly arose because plaintiffs did not move to remand the case to state court. Pursuant to 28 U.S.C. § 1442(a)(1) (1970), the removal petition al-

leges that defendants acted under color of office. By not trying to remand, it is claimed, plaintiffs admitted that the conduct complained of occurred under color of office and hence they also admitted that defendants acted within their authority. This argument erroneously equates the phrase, "under color of office" for removal purposes, with the concept of scope of authority for immunity purposes. In *Willingham v. Morgan*, 395 U.S. 402, 89 S.Ct. 1813, 23 L. Ed.2d 396 (1969), the Court distinguished these two concepts. The Court stated that the test for removal under § 1442(a) is more easily satisfied than the scope of authority test for immunity, because the purpose of the removal statute is to permit federal officials to litigate all actions against them in a federal forum. *See also Green v. James*, 473 F.2d 660 (9th Cir. 1973). Consequently, plaintiffs' failure to object to removal is inconclusive with respect to whether defendants performed within the perimeter of their authority, and defendants' affidavits must be considered.

Defendants Waner, Miller, Ice and Worsek have submitted affidavits which they claim establish their immunity. Each affidavit describes the duties of the affiant and states that all acts alleged by plaintiffs were undertaken in the course and within the scope of the affiant's official duties. According to his affidavit, defendant Waner is Regional Director of HUD and manages the Chicago HUD area office, with its staff of program managers, and professional and technical specialists. He is responsible for all field operations, including initiation, planning, and execution of programs, housing management, and community services. Of the defendants sued for monetary relief, he has clearly the greatest responsibility and widest authority. Defendant Miller's duties consist of direct supervision of the Housing Program Management Branch, Loan Management Branch, and Property Disposition Branch in the per-

**436**

formance of their functions. (Affidavit of William Miller.) Defendant Ice is responsible for disposition of HUD property in the Chicago Area. (Affidavit of Richard Ice.) As owner of Milton Worsek & Son, the Chicago Area Management Broker, Worsek's duties are to supervise and direct workers who perform maintenance work on HUD buildings, pursuant to a contract between HUD and Milton Worsek & Son. (Affidavit of Ernest Worsek.)

■ To sum up, defendants' duties include managing HUD buildings. Plaintiffs claim that defendants wilfully neglected their management duties, and fell short of their responsibilities under the applicable HUD regulations, statutes and ordinances. We are consequently persuaded that defendants' affidavits show that they were indeed acting within the outer limit of their authority in performing the actions which allegedly injured plaintiffs. All that is required is a general connection between the official duties and the alleged wrongful acts. *Scherer v. Brennan, supra.*

Plaintiffs have failed to submit counter-affidavits or otherwise demonstrate that defendants exceeded their authority. Nothing in the materials submitted here indicates that any genuine issue of material fact exists with respect to the scope of authority issue, and defendants therefore were within the scope of their authority. In *Konigsberger v. Hunter,* 308 F.Supp. 1361 (W.D.Mo.1970), the court rested its holding that the defendant officials were acting within their authorized powers on affidavits very similar to those submitted here.[7]

### Discretionary Function

■ The next question is whether the defendants exercised discretionary or ministerial powers. The *Bivens*

court cautioned that *no foolproof measure* of discretionary duties exists and moved directly to a policy consideration of whether or not federal officers performing police duties warrant the protection of the immunity defense. *Bivens, supra,* at 1345–46. One source of guidance useful here, however, is the explanation of the discretionary-ministerial distinction developed in the context of the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1970). This distinction is important under the Federal Tort Claims Act, because the Act excepts claims based on performing or failing to perform discretionary functions. 28 U.S.C. § 2680(a)(1970). Generally speaking, a duty is discretionary if it involves judgment, planning or policy decisions. It is not discretionary if it involves enforcement or administration of a mandatory duty at the operational level, even if some degree of professional expert evaluation is required. *Nelms v. Laird,* 442 F.2d 1163 (3d Cir. 1971), *rev'd on other grounds,* 406 U.S. 797, 92 S.Ct. 1889, 32 L.Ed.2d 499 (1972); *Hendry v. United States,* 418 F.2d 774 (2d Cir. 1969). The key is whether the duty is mandatory, and whether the act complained of involved policy-making or judgment. For example, negligence in the construction of a government facility is nondiscretionary and subjects the Government to liability under the Federal Tort Claims Act. *See Seaboard Coast Line R. Co. v. United States,* 473 F.2d 714 (5th Cir. 1973); *Stanley v. United States,* 347 F.Supp. 1088 (D.Me.1972). On the other hand, the Government is not liable under the Federal Tort Claims Act for actions based on the exercise of discretion, even if that discretion is abused. *Newberg v. Federal Sav. & Loan Ins. Corp.,* 317 F.Supp. 1104 (N.D.Ill.1970).

---

7. In *Willingham v. Morgan,* 424 F.2d 200 (10th Cir. 1970), the court held that conclusory affidavits alone could not support a finding of immunity. In that case, the plaintiffs set forth specific facts, in counter-affidavits, showing that defendants were on a frolic and not within the ambit of their duties. Comparable facts are absent in the instant case.

Applying these principles, it is clear that defendant Waner, the Region- discretionary power. His high rank in al Director of HUD, is endowed with the hierarchy of HUD suggests that his responsibilities are comprehensive. As director of all HUD field operations in the Chicago area, he is entrusted with planning duties and is required to set policies. (Affidavit of John Waner.) Consequently, he is absolutely immune from liability for money damages.

The affidavits submitted by defendants Miller and Ice suggest that their duties are not discretionary. They are charged with supervising the disposition of HUD property, but they do not claim that they set policy or engage in planning. Apparently their duties are operational and they execute policies determined by others.

In support of the contention that the officials are not exercising discretion, plaintiffs have cited HUD regulations published in a HUD Property Disposition Handbook which they allege defendants wrongfully violated. In relevant part, these regulations provide:

23. g. *Immediate Protective Repairs.* Irrespective of whether full repairs are delayed, immediate attention shall be given to those repairs required to prevent undue deterioration and eliminate hazardous conditions that may be dangerous to the public.

23. h. *Initial Cleanup and Maintenance.* It is essential that unsightly conditions be corrected promptly. Immediately upon taking possession, the Area Management Broker (AMB) or the local office, if an AMB is not available, shall make arrangements to have all rubbish removed and the premises given a thorough cleaning, including cutting of grass, weeding, and trimming of shrubbery if needed.

23. i. *Continued Maintenance.* In addition to the initial cleaning, arrangements shall also be made for continued "housekeeping" maintenance, such as care of shrubbery and lawns, snow removal and broom cleaning. Unoccupied properties must be maintained in clean and presentable condition.

HUD regulations 4310.5, ch. 2. The regulations are couched in mandatory language suggesting that the officials responsible had a positive, nondiscretionary duty to adhere to them.

One possible barrier to the regulations creating a mandatory duty is that neither party has shown they were published in the Federal Register, and consequently, they do not have the same force of law as duly promulaged regulations. In *Brown v. Lynn,* 392 F.Supp. 559 (N.D.Ill.1975), the court held that unpublished HUD guidelines concerning mortgage foreclosures could not be enforced against private mortgagees. The court reasoned that HUD's own "mini APA," 24 C.F.R. 10 (1974), commands HUD to voluntarily publish its regulations in the Federal Register at least 30 days before their effective date. The purpose of publication is to give notice to third parties who will be bound by the regulations and to afford them an opportunity to participate in the rulemaking. The court held that failure to publish the regulations in the Federal Register indicates that the rules are mere statements of policy. The *Brown* court also relied upon the statement of a HUD official that the particular regulation at issue was not intended to be mandatory.

Several factors which influenced the *Brown* court are missing here. First, plaintiffs seek to enforce the regulations against HUD, and not against a private party which in fairness should have advance notice that certain rules will be enforced. Furthermore, defend-

ant has not contended that the Property Disposition Handbook is only a statement of policy or submitted affidavits of HUD officials to that effect. Finally, failure to follow its own regulations is evidence of HUD's subversion of its statutory obligation to produce housing of sound standards of livability. 42 U. S.C. § 1441 (1970). Thus, we find the mandatory language of the HUD Property Disposition Handbook persuasive in showing that defendants Miller and Ice did not have discretionary power in maintaining vacant HUD buildings. *See also Brown v. Housing Authority*, 471 F.2d 63 (7th Cir. 1972).

Defendants claim that defendants Milton Worsek & Son and Ernest Worsek are entitled to share in the immunity of federal officials. Plaintiffs counter with two arguments. First, they contend that because defendants Worsek are independent contractors and not federal officials, they are not shielded by immunity. Second, they argue that even if immunity extends to federal contractors, the defense of immunity is inapplicable if the contractor acted negligently. Plaintiffs charge that defendants Worsek are guilty of negligence. Were the latter rule followed, however, a hearing on Worsek's alleged negligence would be necessary to resolve the preliminary issue of immunity from liability for money damages.

■ Instead, defendants Worsek are not protected by immunity for the following reasons. Even if independent contractors with the federal government can enjoy immunity from liability for damages, immunity does not protect defendants Worsek for the same reasons defendants Miller and Ice are not immune. Specifically speaking, the affidavit of Ernest Worsek reveals that his contractual duties consisted of supervising maintenance of the HUD building. Although he acted within the scope of his duties, his duties were nondiscretionary. He did not engage in planning or

policy-making, but merely carried out ministerial duties pursuant to contract.

*Balancing of Policy Considerations*

■ The policy which weighs in favor of granting monetary relief is the likelihood and gravity of recurring harm to the individual citizen. This threat is both severe and widespread. Judge Will, in *Brown v. Lynn*, 385 F.Supp. 986, 999 (N.D.Ill.1974), noted that HUD has become the largest owner of vacant buildings in urban communities and described the consequences as follows:

> The impact upon the urban community is substantial, not only in terms of the displaced and traumatized families, but also because of the lost housing, *increased fire hazard, vandalism and blight.* Such adverse consequences are plainly in conflict with the program objective to facilitate progress in providing decent homes, suitable living environments, and properly developed communities. [emphasis added.]

Plaintiffs have submitted facts revealing that these precise conditions, increased fire hazard, vandalism and blight, posed substantial dangers to their wellbeing. In fact, Hud itself commissioned the NIKA Corporation to inspect the HUD building adjacent to plaintiffs, and the NIKA report detailed the dilapidated condition of the building. (Memorandum in Opposition to Defendant's Motion for Summary Judgment, Exhibit D.) According to the report, the building was unsafe and unsanitary. Glass was broken throughout. Rats and mice were prevalent. Foundations were badly cracked. Exterior doors were missing. All floors were buckled. Debris was scattered. In sum, the danger to plaintiffs was substantial.

■■ The contravening consideration is whether immunity would contribute to effective government. Obviously, some draining of government resources occurs whenever government officials

are called to defend their actions in court. In this case, however, the burden to effective government does not outweigh the dangers to individual citizens previously described. In the first place, the statutory waiver of sovereign immunity, 12 U.S.C. § 1702 (1970), reflects a congressional judgment that the Secretary of HUD should be suable. In terms of litigation costs, it is no more expensive to defend against actions for damages than to defend against actions for injunctive relief. But there is a second reason why effective government would not suffer excessively if monetary compensation were permitted. Here, the alleged wrongful conduct does not involve politically sensitive judgments or discretionary acts. Granting damages to plaintiffs would not tend to constrict government functioning in an area where prompt actions and snap judgments are essential, such as the control of prison outbreaks, or the protection of the President. *E.g., Scherer v. Brennan,* 379 F.2d 609 (7th Cir. 1967). The effect of denying immunity is merely to place an additional sanction against officials who fail to perform clear ministerial duties.

### Good Faith Defense

At this point in the litigation, neither party has raised the defense of good faith. We merely note that defendants have available the defense of good faith in the performance of their official duties, if their good faith was reasonable. *O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975); *Tristis v. Backer,* 501 F.2d 1021 (7th Cir. 1974).

Judgment will enter for defendant Waner on the issue of immunity from liability for money damages. With respect to defendants Miller, Ice, Milton Worsek and Son, and Ernest Worsek, the motion for summary judgment on the issue of immunity from liability for money damages is denied.