**Carnell R. ATWATER, Plaintiff,**

v.

**Richard L. ROUDEBUSH, Administrator of Veterans Affairs, Individually and in his official capacity, et al., Defendants.**

No. 75 C 3763.

United States District Court,
N. D. Illinois, E. D.

Sept. 29, 1976.

Kenneth Kandaras, Chicago, Ill., for plaintiff.

Samuel K. Skinner, U. S. Atty., Chicago, Ill., for defendants.

## MEMORANDUM DECISION

MARSHALL, District Judge.

Plaintiff Carnell Atwater, a former employee of the Federal Government, challenges the action of certain federal officials who set-off a prior debt allegedly owed by him to the Government against his accrued back wages and retirement benefits. The complaint charges Richard L. Roudebush, individually and as Administrator of Veteran's Affairs, Carla Hills, individually and as Secretary of the Department of Housing and Urban Development, and Oscar M. Piner, individually and as Chief of the Fiscal Service for the Veterans Administration at Hines Hospital, with violating plaintiff's rights under the due process clause of the Fifth Amendment to the Constitution, under 15 U.S.C. § 1671 et seq., and under 28 U.S.C. § 2415. Plaintiff seeks money damages and certain declaratory and injunctive relief. The case is presently before the court on defendant's motion for summary judgment.[1]

Carnell Atwater was employed by the Veterans Administration (VA) as a janitor at Hines Hospital from June, 1953 to April 30, 1975, when he retired as a result of a physical disability. It is undisputed that upon retirement, Atwater became entitled to a lump sum payment of back wages from the VA amounting to $1,187.38 and an undetermined annuity from the United States Civil Service Commission.

During a conference with plaintiff on May 8, 1975, an employee of the VA Payroll Unit told Atwater that his final salary payment of $1,187.38 "must be applied" to an outstanding debt he allegedly owed to the Federal Housing Administration (FHA) in the amount of $2,708.82, plus accrued interest. The indebtedness is said to have arisen from the payment by the FHA of claims filed by the Fairfield Savings and Loan Association of Chicago, Illinois, on a home improvement loan upon which plaintiff and his wife had allegedly defaulted. A promissory note for the loan had been executed by Atwater and his wife on December 14, 1964 and the subsequent default had been reported by the bank to the FHA for insurance payment under the provisions of Title I of the National Housing Act. (12 U.S.C. § 1701 et seq.). At the employment termination conference Atwater was also told that the unpaid balance still owing on the debt after application of his final salary payment would have to be satisfied by set-offs against his retirement benefits. However, Atwater was assured the monthly retirement checks for an undetermined (and presumably reduced) amount would soon begin arriving on a regular basis from the Civil Service Commission.

Two weeks later, on May 23, 1975, plaintiff received a letter from defendant Piner which confirmed the set-off procedure described at the May 8 conference. The letter stated that his final salary check, dated May 19, 1975, had been applied to the FHA debt, that the remaining unpaid balance would be taken from his retirement fund, and that any questions should be directed to the FHA or Piner's office.

The May 23 letter was accompanied by a copy of a letter sent by the director of the FHA[2] to the VA on December 5, 1967. After explaining the nature and amount of Atwater's indebtedness, the FHA director requested that the letter be promptly placed in Atwater's personnel and payroll records as a safeguard against any funds that might become due Atwater if he were separated from the government service prior to the liquidation of the debt. The di-

---

1. Defendants' allied motion to dismiss for lack of personal jurisdiction has been mooted by the subsequent service of a summons upon defendants Hills and Roudebush.

2. The director is not a defendant in the present action.

rector also asked the VA to advise Atwater of his liability and to insist upon adherence to a satisfactory plan of repayment.

It is not clear whether Atwater ever received notice of the alleged liability before May, 1975. A VA interoffice memo dated December 14, 1967 indicates that VA Personnel Service employees intended to counsel Atwater and a margin notation on the memo states that Atwater "is going to make monthly payments." However, plaintiff states in his affidavit that he does not recall ever attending a counselling session concerning the loan or its repayment. In any event, it is undisputed that no payments were made by Atwater on the debt after 1967.

On June 5, 1975, the assistant fiscal officer of the VA office at Hines Hospital received a call from a social worker requesting the agency to further explain its action to Mr. Atwater. According to a report filed by the fiscal officer, the social worker said that Atwater "appeared to be practically destitute" and was in need of aid because he had no income. The fiscal officer met with Atwater and his son the following day. She gave the son copies of the letters received by Atwater on May 23, and also gave him the names, addresses and telephone numbers of FHA personnel. She further stated that "it was mandatory" for the VA to comply with the FHA collection request and that Atwater should contact the FHA directly.

On November 5, 1975, Atwater filed his complaint in the present case against defendants Roudebush, Hills and Piner. He alleges that Roudebush is responsible for the administration of the VA, which operates Hines Hospital, that Piner directs the payment of wages and retirement benefits for employees of Hines Hospital, and that Hills supervises and directs the FHA. Atwater asserts that he has received none of his back wages, believes that he has received only limited retirement benefits, and fears that future retirement benefits will be withheld for the FHA. Claiming that these funds are his only source of income, Atwater alleges that the withholding of these funds by the defendants has caused him to miss several monthly home mortgage payments and to suffer great hardship in providing for his support.

Plaintiff rests his cause of action on three claims. First, he claims that the defendants violated his due process rights by taking his funds without providing adequate notice or a hearing concerning the existence, validity and amount of the debt to the FHA. Second, he contends that the defendants have violated federal garnishment restrictions imposed by 15 U.S.C. § 1673 by withholding an excessive proportion of his disposable earnings. Finally, plaintiff asserts that 28 U.S.C. § 2415, which bars contract actions by the United States after six years from the date the claim arose, renders FHA's claim unenforcible.

In response, defendants' motion for summary judgment argues that principles of due process are inapplicable here given the express statutory authorization for the set-off procedure or, alternatively, that plaintiff has received all the process that is constitutionally due. In addition, defendants contend that the federal garnishment statutes only apply to cases where earnings are withheld as a result of court proceedings, that the statute of limitations is inapplicable where the Government's claim arises out of the same transaction or occurrence that is the subject matter of the plaintiff's claim, and that the defendants are all entitled to official immunity with respect to any claim for money damages. The motion is supported by several affidavits and by a certified copy of the VA file relating to Atwater.

## Procedural Due Process

█ The requirement of procedural due process imposes constraints on governmental decisions that deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendments. The interest of the plaintiff in the receipt of his back wages and retirement benefits is clearly a sufficient property interest to in-

voke these procedural safeguards.[3] The issue thus becomes what type of process is constitutionally due. The essential components of procedural due process are the right to notice and an opportunity to be heard, which "must be granted at a meaningful time and in a meaningful manner." *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972). Supreme Court cases have consistently held that some form of hearing is required before an individual is finally deprived of a property interest. *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976).

■ In order to determine what form of a hearing is required, we must evaluate the content of existing rules and procedures employed by the Government in set-off cases. The Government possesses clear legal authority to apply all available assets in its possession, including both unpaid salary and retirement funds, belonging to a defaulting officer or employee, toward liquidation of that individual's indebtedness to the Government. This right of set-off is grounded in the common law right of every creditor to apply the moneys of his debtor in his hands to the extinguishment of claims due him from the debtor. *Gratiot v. United States*, 40 U.S. (15 Pet.) 336, 10 L.Ed. 759 (1941); 41 Dec.Comp.Gen. 178 (Sept. 5, 1961). It is also authorized by statute. Government officials are authorized by 5 U.S.C. § 5512 to withhold the pay of "any individual" in debt to the Government. See *Parker v. United States*, 187 Ct.Cl. 553 (1969). In addition, the Federal Claims Collection Act of 1966 (31 U.S.C. § 952) requires all federal agencies to attempt collection "of all claims of the United States for money or property arising out of the activities of, or referred to, his agency." Collection standards promulgated under this statute authorize administrative agencies to set-off liquidated claims against the compensation due federal employees (4 C.F.R. § 102.3 (1976)) and authorize the reporting agency to contact the employing agency to invoke the set-off procedure when the debtor employee works in a different branch of the Government (4 C.F.R. § 102.5 (1976)). Specific collection standards incorporating these same procedures have been adopted by the Department of Housing and Urban Development (see 24 C.F.R. §§ 17.20–17.35 (1976)) and by the United States Civil Service Commission (see C.F.R. §§ 179.101–179.102 (1976)). In addition, the Commission has promulgated guidelines which indicate that the Commission does not review either the validity or the amount of an indebtedness certified by a reporting agency prior to set-off. The debtor is informed that he should contact the reporting agency and that he has a right of appeal to the Comptroller General of the United States (see Federal Personnel Manual Supplement 831–1, Sub-chapter S19–5(b) (April 30, 1969)).

■ Thus the FHA and the VA possessed clear authority to initiate the set-off mechanism to collect plaintiff's alleged debt. Nonetheless, we reject the defendant's contention that the existence of this clear authority excused them from providing any form of notice or hearing. The statutes and regulations cited above are silent on the procedural components of a set-off. They neither require nor proscribe a hearing. The regulations on collection standards do provide, however, that "[n]othing contained in this chapter is intended to require an agency to omit or foreclose administrative proceedings required by contract or by law" (4 C.F.R. § 101.7 (1976)). Consequently, we cannot relieve the administrators of the duty to follow the dictates of due process.

In light of the absence of any prescribed administrative procedures, we must evaluate the procedures actually provided in this case to determine whether plaintiff had an effective process for asserting his claims and defenses before the set-off of his al-

---

**3.** Several courts have held that retirement benefits and annuities provided by the United States Civil Service have the character of a contractual right and are not a mere gratuity.

See *Price v. United States*, 179 F.Supp. 309, 312 (E.D.Va.1959); *Avant v. United States*, 165 F.Supp. 802, 805–806 (E.D.Va.1958).

leged indebtedness against his compensation became final. The record reveals that Atwater was only afforded an informal oral conference with a VA official prior to the withholding of his final salary payment. This official merely explained the consequences to plaintiff of a decision which had already been made. Atwater had no opportunity to review the evidence used by the agency in making its decision, or to respond in writing and submit additional evidence. He was not informed of a right to seek reconsideration or review of the decision, either administratively or judicially. No pre- or postdeprivation hearing was provided. Atwater received a letter and an additional oral conference after the withholding of his back wages had been effected, but again Atwater was not encouraged to make an input into the administrative process, nor was he even informed that he had a right to challenge it. At best he was encouraged to "contact" the FHA—the agency which first reported the debt. All of these communications conveyed the impression that the set-off was a mandatory, inexorable procedure—a *fait accompli* which must be resignedly accepted.

█ In order to evaluate the constitutional adequacy of these procedures, we must analyze the relevant governmental and private interests affected and draw upon prior decisions which examined analogous situations. Due process is a flexible concept which tolerates such variances in the form of a hearing as may be appropriate to the particular situation at issue. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). A situation similar to the present one involves actions by medical institutions and practitioners to recover amounts due for services rendered under the Medicare program. The amounts typically have been withheld by the Government as a set-off for alleged overpayments. For example, in *Coral Gables Convalescent Home, Inc. v. Richardson*, 340 F.Supp. 646 (S.D.Fla.1972), a fiscal intermediary of the Department of Health, Education and Welfare conducted a fiscal audit of a nursing home's cost reports and determined that it had received overpayments. After the audit and informal conferences between the nursing home and agency officials, but without any administrative hearing, fifty per cent of the nursing home's current payments for Medicare services were withheld to cover the overpayments. Plaintiff was not afforded any other administrative review, and the Medicare Act neither required nor proscribed a hearing in the situation. Despite the absence of statutory hearing and review provisions, the court held that "the failure of defendants to afford plaintiff a post-audit evidentiary hearing prior to instituting deductions from current payments constituted a denial of due process" (340 F.Supp. at 651). The court then ordered defendants to provide an evidentiary hearing at which the nursing home could challenge the accuracy of the audit, ordered the defendants to pay the withheld sums into the registry of the court, and permanently enjoined future set-offs prior to the required hearing. See also *Langhorne Gardens, Inc. v. Weinberger*, 371 F.Supp. 1216 (E.D.Pa.1974).

Confronted with a similar factual situation, the court in *Wilson Clinic & Hospital, Inc. v. Blue Cross of South Carolina*, 494 F.2d 50 (4th Cir. 1974), distinguished *Coral Gables* on the ground that in that case no hearing whatsoever had been obtainable and the computation of the overpayment had been final. In *Wilson Clinic* the court found no due process violation where the hospital and its attorney had notice of the overpayment prior to set-off, had an opportunity prior to set-off to confer with agency officials, to submit evidence and to review the adjustments, and had been informed of the available administrative hearing procedure and the right to seek judicial review.

█ The procedures applied in the present case more closely resemble those in *Coral Gables* than those in *Wilson Clinic*. There are, however, other decisions which disagree with the *Coral Gables* holding that the failure to provide a pre-deprivation hearing constitutes a denial of due process. Thus in *Russi v. Weinberger*, 373 F.Supp. 1349 (E.D.Va.1974), and *Haverhill Manor*,

*Inc. v. Commissioner of Public Welfare*, 330 N.E.2d 180 (Mass.1975), the courts held that a professional medical corporation and a nursing home had no right to a hearing prior to the withholding of past overpayments from current obligations under health services programs. The two decisions rested heavily upon their efforts to distinguish *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), where the Supreme Court held that due process required that welfare officials provide notice and an oral evidentiary hearing prior to any termination of welfare benefits. The courts in *Russi* and *Haverhill Manor* reasoned that the Goldberg requirement of a pre-termination hearing turned upon the fundamentality and economic necessity of welfare payments to recipients, and found no comparable adverse impact on the recipient medical corporations, which were well-established, solvent economic institutions. The Fifth Circuit has also denied the right to pre-deprivation hearings in cases involving withholding of payments for services under agricultural and Medicare programs. See *Hilburn v. Butz*, 463 F.2d 1207 (5th Cir. 1972); *Peterson v. Weinberger*, 508 F.2d 45 (5th Cir. 1975).

If the need for a pre-action hearing turns upon the severity of the deprivation, a second line of decisions offers more solid support for the proposition that a hearing of some sort was required before the set-off was imposed in the present case. These decisions indicate that where plaintiffs are needy individuals receiving social security retirement and disability benefits, rather than well-established solvent economic institutions receiving payments under various federal services programs, the potential adverse impact of an erroneous administrative determination mandates a pre-set-off hearing. See, *e. g., Elliott v. Weinberger*, 371 F.Supp. 960, 969–73 (D.Hawaii 1974); *Thomas v. Weinberger*, 384 F.Supp. 540, 543 n. 4 (S.D.N.Y.1974). Such a result was reached in *Mattern v. Weinberger*, 519 F.2d 150 (3d Cir. 1975), the most recent case in this area, even though the court rejected the severity-of-impact test. In *Mattern* plaintiff was a recipient of disabled widow's benefits under the social security program. She challenged the agency's procedure for set-off of an overpayment of benefits without a prior hearing. The court held that the agency's failure to provide a prior hearing violated due process. In addition, the court indicated that the constitutionality of pre-deprivation procedures, absent a full prior oral hearing, is undermined where (1) there is no right to an immediate post-deprivation hearing, (2) the torpidity of administrative review makes a lengthy deprivation likely, and (3) the claimant raises factual issues which hinge upon his credibility and which cannot be resolved by documentary proof. The court noted, however, that the opportunity to present oral evidence at a pre-deprivation hearing is not particularly valuable where technical financial data is at issue, such as the existence and delinquency of a debt, or where the dispute is of a purely arithmetical nature, such as the computation of an earnings statement. In addition, the court rejected the Government's claims that the ability of existing pre-deprivation procedures to determine the probable validity of the administrative claim and the severity of the impact resulting from the deprivation were additional factors which controlled the issue of whether a pre-deprivation hearing was required.

*Mattern* is somewhat weakened by the subsequent decision in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Unlike *Mattern, Eldridge* did not involve the set-off of past overpayments against current social security payments due to an eligible recipient. Instead, it involved the basic eligibility of a recipient to receive any further social security benefits based upon his claim of a continuing medical disability. The Supreme Court held that an evidentiary hearing is not required prior to the termination of the disability benefits. However, the Court emphasized that the existing pre-deprivation procedures provided claimants with an effective process for asserting claims prior to any administrative action as well as a right to a post-termination evidentiary hearing and judicial review. After a claimant was

informed of a possible termination, he was allowed to review the evidence upon which the decision would be based, to respond in writing, and to submit additional evidence *before* the agency made its final determination. After termination, the claimant could seek reconsideration at the state administrative level, followed by an evidentiary hearing at the federal level and, ultimately, by judicial review. The Court thus reaffirmed the principle that a recipient must have a meaningful opportunity to present his case prior to any final administrative action. The shift from *Mattern* to *Eldridge*, if any indeed exists, is one of degree rather than substance. A full evidentiary hearing prior to termination may not be required, but an effective opportunity to press one's claim prior to administrative action must still be available.

In evaluating the content of these procedures, the Court's inquiry in *Eldridge* was framed by many of the same factors outlined in *Mattern* and previous cases. And by any of these standards, the procedures afforded in the present case were inadequate. In *Eldridge* the Court indicated that analysis of due process requirements requires consideration of three factors:

> first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. 96 S.Ct. at 903.

The private interest at stake here is a substantial one. The property involved was derived not from Government-administered benefits, but from compensation for services rendered to the Government. Wages are a "specialized type of property presenting distinct problems in our economic system." *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 340, 89 S.Ct. 1820, 1822, 23 L.Ed.2d 349 (1969). The withholding of those wages can impose a tremendous hardship on an individual and drive him below the poverty line. Furthermore, contrary to *Mattern, Eldridge* indicated that the degree of this potential deprivation is a factor in analyzing the validity of administrative procedures. In the present case, Atwater was deprived of his only source of income. As a result, a social worker reportedly described him as "practically destitute." In addition, Atwater's age and disability may have severely limited his opportunities for temporary employment to cushion the loss. *Eldridge* and *Mattern* agreed that the possible length of the wrongful deprivation is an additional factor to be weighed. Here Atwater was given no pre- or postdeprivation hearing, and it does not appear that any administrative review procedures were even contemplated. The delay between the actual set-off and the present action for judicial review already exceeds one year. In light of Atwater's modest resources and his lack of access to effective and rapid review, his interest in some form of a hearing prior to administrative action is indeed strong.

However, the actual procedures applied in this case failed to take proper account of this interest. *Mattern* and *Eldridge* both recognized that existing procedures must afford adequate safeguards against erroneous deprivations. The risk of error is lessened where the administrative decision is based upon documentary proof and is based upon a sharply focused, objective inquiry. Thus, in *Eldridge*, routine and standardized medical reports provided a reliable assessment of a worker's physical disability. Similarly, here the existence and amount of the debt were undisputed and were susceptible of proof by written submissions. In addition, Atwater's defense of the statute of limitations is a purely legal matter which, unlike factual disputes, can be resolved without the need for a subjective assessment of a witness's credibility. In this context the potential value of a prior evidentiary hearing or an oral presentation is lessened. Nevertheless, the Court in *Eldridge* recognized that even with easily documented decisions, additional safeguards are necessary to prevent mistakes. At a

bare minimum, the recipient (1) should be given access to information relied upon by the agency as the reasons for its decision, and to a summary of the evidence upon which the decision is based, (2) should be given an opportunity to submit additional evidence or arguments in written form challenging the agency action *prior to a final decision*, and thereafter (3) should be informed of his right to administrative review. None of these safeguards were present in this case. Instead Atwater only received an informal oral conference with an agency official who explained the consequences of a decision that had already been finalized. This is simply not enough.

A final factor in the balance involves the administrative burden and societal costs of the additional procedural safeguards. Neither side has presented us with any estimates of the probable monetary cost of requiring a pre-deprivation evidentiary hearing. On any balancing of the interests analysis, however, the Government's interest in protecting the treasury by prompt recovery of past debts is outweighed by the slight incremental cost of providing at least the limited form of hearing which we have described and which the Court in *Eldridge* approved. The judicial model of a full evidentiary hearing is not required in all cases, but there must be an effective process for asserting one's claim prior to final administrative action. Because the oral conference provided here failed to meet this standard, we must reject defendants' claims that their actions comported with the dictates of due process. Consequently, their motion for summary judgment on the first claim of plaintiff's complaint is denied.

### Federal Garnishment Restrictions

■ The second claim of Atwater's complaint alleges that the defendants violated federal garnishment restrictions imposed under 15 U.S.C. § 1673 by withholding an excessive proportion of his disposable earnings.[4] We agree with the defendants that Atwater has failed to show that the set-off procedure utilized in the present case constituted a "garnishment" within the meaning of that statute. The term "garnishment" is defined in 15 U.S.C. § 1672(c) as "any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt." The court in *Western v. Hodgson*, 494 F.2d 379 (4th Cir. 1974), evaluated the legislative history behind this provision and held that the term "garnishment" contemplates a judicial transaction. Although that case involved a wage assignment under contract rather than a set-off procedure by a government agency, both are typically non-judicial transactions outside the scope of the statute. We therefore grant defendants' motion for summary judgment as to the second claim of plaintiff's complaint.

### Statute of Limitations

■ Plaintiff's third claim alleges that the defendants are barred from enforcing the FHA debt by the six year statute of limitations set forth in 28 U.S.C. § 2415.[5] That statute, which Congress enacted in 1966, imposed time limitations on contract and tort actions brought by the Government. Congress thereby made major inroads into the general rule that statutes of limitations cannot be asserted against the Government.

The undisputed facts establish that the Government's right of action on Atwater's defaulted loan accrued in 1967 and was never revived by a later partial payment or

---

**4.** Under 15 U.S.C. § 1673, Congress prohibited garnishments in excess of 25% of an employee's weekly disposable earnings, or the excess over thirty times the minimum hourly wage, whichever is less.

**5.** 28 U.S.C. § 2415(a) provides that ". . . every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express

or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues . . . *Provided*, That in the event of later partial payment or written acknowledgment of debt, the right of action shall be deemed to accrue again at the time of each such payment or acknowledgment . . . . ."

written acknowledgment of the debt. Therefore, the Government's claim on the defaulted loan appears to have been stale for almost two years at the time of its assertion by administrative set-off in May, 1975. However, the defendants invoke an exception under 28 U.S.C. § 2415(f) [6] which relieves the Government of any statutory bar where the action is brought, as here, against rather than by the Government and where the Government then asserts a claim which arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. There is, however, no basis for finding that the Government's claim on a 1967 indebtedness arose out of plaintiff's claim for compensation for services performed in 1975.

But neither the limitations statute in question nor its exception speak to the common law doctrine that time barred claims held by a debtor (here the Government) can be set-off against current claims held by a creditor (here plaintiff). The time honored rule has been that a statute of limitations bars the remedy and does not extinguish the liability. 6 Williston, *Contracts* § 2002 (Rev.ed.1938) and cases there cited; *cf. Weems v. Carter,* 30 F.2d 202 (4th Cir. 1929). And the legislative history makes clear that that doctrine was not disturbed by the statute. Thus, in testimony before the House subcommittee which held hearings on the bill, the following statement by the Assistant Attorney General concerning the scope of Section 2415(f) was accepted without challenge or comment by the committee members and was later paraphrased in a Senate report: [7]

> The bill will not affect the authority of each agency to offset, on its own books and without resort to the courts, any claim it may have against a person to whom it is about to make a payment based on the same or an unrelated transaction. For example, under 31 U.S.C. 71a, 237, a claimant has ten full years to present to the General Accounting Office a claim against the United States. We do not intend any diminution of that agency's authority to offset against a claim so presented any debt, *however old,* such claimant owes to the United States. (*Hearings on H.R. 13650, 13651, 13652, and 14182 Before Subcommittee No. 2 of the House Committee on the Judiciary,* 89 Cong., 2d Sess., at 8 (1966)) (emphasis added.)

Therefore, even though the Government would have been barred by the statute of limitations if it had attempted to bring a direct action to collect the debt owed to the United States, it may still recover that debt on the administrative level by set-off against current payments to the debtor whose obligation is time barred.

### Official Immunity

██ Defendants' final contention, in their motion for summary judgment is that they are entitled to official immunity from plaintiff's claims for money damages. In *Barr v. Mateo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), the Court held that federal executive officials are absolutely immune from damage actions where the complained of activity resulted from a policy making or discretionary decision that was made with, albeit on the outer perimeter of, the official's authority. The scope of this official immunity rule, and the extent of its application to a particular official, vary depending upon the nature of his duties and functions. The privilege is not restricted to executive officers of cabinet rank, but is potentially applicable to all

---

**6.** Section 2415(f) provides:

The provisions of this section shall not prevent the assertion, in an action against the United States or an officer or agency thereof, of any claim of the United States or an officer or agency thereof against an opposing party, a co-party, or a third party that arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. A claim of the United States or an officer or agency thereof that does not arise out of the transaction or occurrence that is the subject matter of the opposing party's claim may, if time-barred, be asserted only by way of offset and may be allowed in an amount not to exceed the amount of the opposing party's recovery.

**7.** S.Rep. No. 1328, 89th Cong., 2d Sess. (1966), reprinted at 1966 U.S.Code Cong. & Ad.News 2506–07.

officers in the executive hierarchy. *Barr v. Mateo, supra,* 360 U.S. at 572–73, 79 S.Ct. at 1340; *Johnson v. Alldredge,* 488 F.2d 820, 824 (3d Cir. 1973); *Estrada v. Hills,* 401 F.Supp. 429 (N.D.Ill.1975).

Resolution of the immunity issue must take into account the functions and responsibilities of the particular defendants in their official capacities. According to the sparse allegations of the complaint, defendants Roudebush and Hills both have a wide range of authority and discretion. Roudebush is the Administrator of Veterans' Affairs and the chief executive officer of the Veterans Administration (VA). Roudebush is responsible for the administration and management of the VA, which operates and administers Hines Hospital, where plaintiff was employed. Hills is the Secretary of the Department of Housing and Urban Development. She directs and supervises the administration of the Federal Housing Administration (FHA), the agency which requested the withholding of plaintiff's salary. In addition, both of these defendants are required by 31 U.S.C. § 952 to "attempt collection of claims of the United States for money or property arising out of the activities of, or referred to, his agency." Regulations promulgated under this statute provide these agency heads with extensive powers for the collection and compromising of debts (see 4 C.F.R. §§ 101–105 (1976)).

Atwater alleges that both Roudebush and Hills "established, knew or should have known of the policy and actions ordering Atwater's lump sum back wages and retirement benefits terminated" and that these actions unconstitutionally deprived Atwater of his property without adequate notice or hearing. Neither plaintiff nor defendants have supplemented these allegations with affidavits containing facts describing the duties and actions of Hills and Roudebush with respect to the circumstances of the present case. However, the defendants have provided the full VA file pertaining to Atwater's claim and it contains no suggestion that either Hills or Roudebush had any direct participation in or actual knowledge of the occurrence upon which Atwater's claim is based.

It is apparent that Roudebush and Hills are executive officials of high rank with broad duties and comprehensive responsibilities for the operation of their respective departments. For officials of this stature, *Barr v. Mateo, supra,* requires that immunity from damage actions be afforded unless the official acted outside the outer perimeter of his duties or unless the official was performing nondiscretionary functions. With respect to the first criterion, there is not the slightest indication that either Roudebush or Hills acted outside their line of duty in this case. Their duty to attempt the collection of Atwater's debt to the FHA was clearly mandated by statute. Therefore the defendants' transgression must rest, if at all, on their failure to authorize or direct lower federal officials to accord every applicable component of procedural due process to Atwater in implementing this duty. Such a failure would still be insufficient, however, because all that is required for immunity is a general connection between the official duties and the alleged wrongful acts. *Estrada v. Hills,* 401 F.Supp. 429, 436 (N.D.Ill.1975). Concerning the second criterion, we believe that these defendants' alleged actions contained those qualities of judgment and factual evaluation which characterize policy-making or discretionary functions. The decision concerning what form of process to provide persons such as Atwater was not a routine determination strictly controlled by administrative guidelines or specific directives. On the contrary, the applicable regulation merely provided that "Nothing contained in this chapter is intended to require an agency to omit or foreclose administrative proceedings required by contract or by law" (4 C.F.R. § 101.7 (1976)). This section is prohibitory rather than directive in nature and leaves open an area of discretion for the policy-maker. Furthermore, as we have recognized, the dictates of due process are not fixed but vary with the particular circumstances in question, such as the degree to which a determination is capable of documentary proof. Consequently, it would impose an impractical and unwarranted bur-

den on these executive officials to hold them personally liable for money damages for errors in the procedural implementation of their statutory duty. The alleged procedural defects at issue here also lack the severity and pervasiveness which would accord overriding weight to the individual's claim for compensatory relief for his injuries. *Cf. Estrada v. Hills*, 401 F.Supp. 429, 438–39 (N.D.Ill.1975). We therefore hold that defendants Roudebush and Hills are absolutely immune from liability for money damages.

 We reach a contrary result with respect to defendant Piner. According to his affidavit, Piner was the Chief of the Fiscal Service at the Hines Veterans Administration Hospital. He supervised the proper payment of wages and the initial computation of retirement benefits for hospital employees. Piner conducted the oral conference with Atwater and informed him that his final salary payment and retirement benefits "must be applied" to the FHA debt. Piner also attests that he viewed the set-off action as controlled and authorized by the December, 1967 demand letter from the FHA director, by applicable laws and regulations, and by the decisions of the Comptroller General.[8] These facts establish that although Piner was acting within the scope of his duties, he was performing nondiscretionary duties. He merely implemented on the operational level a directive which had been determined by others. Although the directive in the letter only mandated the set-off action and not the procedures utilized to bring it about, Piner evidently felt constrained by the imperative language of the letter to execute its command in a summary manner. With Piner's perceived range of discretion and authority so rigidly circumscribed, his actions did not involve an exercise of judgment of the type fairly contemplated by the immunity doctrine. As a lower echelon federal employee, Piner has a qualified immunity and has available the defense of good faith in the performance of his official duties. However, Piner has not chosen to present factual support for this defense at this stage in the proceedings. We therefore deny his claim of official immunity.

### Conclusion

In summary, we deny defendants' motion for summary judgment with respect to the first claim of plaintiff's complaint and grant summary judgment with respect to the second and third claims. We also hold that defendants Hills and Roudebush, but not defendant Piner, are entitled to absolute immunity from liability for money damages. We further note that plaintiff's due process claims appear ripe for summary judgment in his favor upon presentation of a proper motion and a demand for an administrative hearing before the Federal Housing Administration. At such a hearing plaintiff would have a right to review the evidence relied upon by the two agencies in effecting the set-off action and the reasons for their decision, and would have an opportunity to submit evidence and arguments challenging the agency actions. Until that hearing is held, restitutionary and injunctive relief appear proper and will be entertained on motion.

---

8. Plaintiff has moved to strike portions of Piner's affidavit which state that he was acting in the course of his official federal duties. We agree that an affidavit is no place for ultimate facts or conclusions of law. Therefore these statements will be disregarded. 6 Moore's *Federal Practice*, ¶ 56.22[1] (2d ed. 1976); *Ashwell & Co. v. Transamerica Ins. Co.*, 407 F.2d 762 (7th Cir. 1969). However, we note that plaintiff's attorney's affidavit suffers from a similar infirmity, since he has no personal knowledge from which to conclude that the defendants Hills, Roudebush, and Piner "did not act within the scope of their official federal duties."