In the Matter of MAYFLOWER NURSING HOME, Petitioner, v OFFICE OF HEALTH SYSTEMS MANAGEMENT OF THE DEPARTMENT OF HEALTH OF THE STATE OF NEW YORK et al., Respondents.

Third Department, July 29, 1982

APPEARANCES OF COUNSEL

*Hoffinger, Friedland & Roth* (*Robert Z. Dobrish* of counsel), for petitioner.

*Robert Abrams, Attorney-General* (*Alan W. Rubenstein* and *William J. Kogan* of counsel), for respondents.

OPINION OF THE COURT

MAIN, J.

Petitioner Mayflower Nursing Home, a partnership consisting of Max Lewko, Etta Gottlieb and Carla Ekstein, commenced operations in New York City in November of 1969 as a private proprietary nursing home, the partners having purchased the facility from Bertha Teller pursuant to an agreement reciting that said partners "[were] the

successors in interest to Bertha Teller and Moses Braunstein, the person or persons heretofore using such name or names to carry on or conduct or transact business." Teller and Braunstein had previously operated the home pursuant to a July 1, 1962 25-year lease which provided for an annual rental of $168,000,[1] and in September of 1969 Lewko, Gottlieb and Ekstein agreed to lease the premises for a 20-year term at an annual rental of $210,000 for the leasehold and $36,000 for equipment. Shortly thereafter, Moses Braunstein became owner of the fee and began accepting payments under the lease as landlord.

In November of 1969, petitioner applied to respondents for a determination that, in fixing its Medicaid reimbursement rate for rental expenses, its lease would be classified as "arm's length". Health Department policy at the time provided that facilities with "arm's length" leases would receive reimbursement for their actual rental expenses, subject to certain ceilings, while facilities with "nonarm's length" leases would receive reimbursement for rental expenses at amounts fixed by the department which might not correspond to actual rental expenses. In its application, petitioner identified the lease at issue here as "an armslength transaction in which there is no relationship, direct or indirect, of any kind whatsoever between lessor and lessee", and respondents subsequently granted petitioner's request and fixed its rental reimbursement on the basis of an "arm's length" lease.

Later, following an audit of petitioner's financial cost reports for the years 1969, 1970 and 1971, respondents determined in January of 1975 that the September, 1969 lease had been a nonarm's length transaction owing to the close business relationship between Lewko, a partner in the nursing home, and Braunstein, his landlord under the lease. As a consequence, respondents conclude that petitioner should have been reimbursed based upon a nonarm's length rental for the leasehold from January 1, 1970 and that it should have been allowed only $5,000 for equipment rental for the years 1970 and 1971, and this resulted in the

1. The base rental under said lease was $93,600 to which other costs were added producing the $168,000 figure.

withholding of $250,000 from the Medicaid reimbursement to which petitioner was otherwise entitled.

To recover this sum, petitioner commenced a lawsuit in State Supreme Court against the State Commissioner of Health and the Commissioner of the New York City Human Resources Administration, who responded with a counterclaim for an additional $600,000 which was allegedly owed to the State by petitioner for 1970 through 1974 because the subject lease was nonarm's length throughout that period. Withholding determination of a motion by petitioner for partial summary judgment in the proceeding, the court instead dismissed the petition and granted petitioner leave to demand an appropriate administrative hearing with regard to the parties' conflicting claims. Following such a hearing, respondent Director of the Office of Health Systems Management adopted the hearing officer's findings of fact, conclusions and recommendations to the effect that petitioner had failed to sustain its burden of proving that the subject lease was "arm's length". Accordingly, he determined that respondents' claim for recovery of Medicaid reimbursement overpayments should be sustained and directed petitioner to pay the sum of $966,579[2] to the New York State Department of Health, Office of Health Systems Management. Seeking review of this order, petitioner then instituted the present article 78 proceeding.

We hold that the challenged determination should be confirmed and, in so ruling, initially find without merit petitioner's assertion that it was error to hold that petitioner had the burden of proving that the subject lease was "arm's length". Since petitioner brought the lawsuit to recover the $250,000 withheld by respondents and thereby challenged the classification of its lease as "nonarm's length", it was properly considered to be the initiator of this proceeding upon whom the burden of proof rested (State Administrative Procedure Act, § 306, subd 1).

Moreover, respondents did not err in holding that petitioner's lease was, under then applicable departmental rules and regulations, "nonarm's length" in nature. During

---

**2.** Petitioner does not challenge the accuracy of this figure which represents the money in contention over the lease plus additional unrelated expenses.

the period at issue former regulation 10 NYCRR 86.28 provided, in pertinent part, as follows: "Costs of related organizations. (a) Costs applicable to services, facilities and supplies furnished to the medical facility by organizations related *to the provider by common ownership or control* are includable in the computation of the basic rate at the cost to the related organization." Relying upon this quoted language, respondents could justifiably conclude that, where the landlord for a nursing home is related by "common ownership and control" to an operator thereof, the lease between the two parties is "nonarm's length" in nature. Such a ruling would be consistent with the obvious purpose behind the regulation which is to prevent Medicaid reimbursement for artificially inflated costs generated by self-dealing and by contrived nonarm's length relationships which are not reasonably related to the efficient production of nursing home services.

In this instance, there is ample evidentiary support for a finding that Lewko, a partner in the operation of petitioner, and Braunstein, the landlord for petitioner, were related "by common ownership and control" with the result that the lease in question was "nonarm's length". Not only were Lewko and Braunstein partners in the operation of Fulton Nursing Home in New York until it closed in 1967, but also as noted above, Lewco, as a purchaser of petitioner nursing home, was a successor in interest to Braunstein. Moreover, Lewko and Braunstein were also partners during the period at issue here in the operation of the Laconia Nursing Home in New York and the Fulton Newport Nursing Home in Virginia. It is likewise significant that the rental claimed was substantially greater than the rental under the lease which covered the premises beginning in 1962 for a period of 25 years and petitioner failed to demonstrate that the increased rental was reasonable based upon market factors in 1969 (see *Beechwood Sanitarium v Axelrod,* 79 AD2d 1084, mot for lv to app den 54 NY2d 601, app dsmd __ US __ [Nov. 2, 1981]). Under all of these circumstances, respondents' construction of 10 NYCRR 86.28 is neither irrational nor unreasonable, and their ultimate determination is clearly supported by substantial evidence. That being so, the determination should

not be disturbed (cf. *Matter of Johnson v Joy,* 48 NY2d 689).

Lastly, it should be noted that respondents did not make an impermissible retroactive rate revision so as to recover reimbursement overpayments. Since errors by State employees cannot bind the State or prevent recoupment of unauthorized payments (*Matter of University of Rochester Strong Mem. Hosp. v Whalen,* 61 AD2d 867, mot for lv to app den 44 NY2d 646), respondents could properly alter the classification of the lease once evidence of the indealing between Lewko and Braunstein came to light. Furthermore, given the circumstances of this case, including the misleading statement in petitioner's application for reimbursement to the effect that there was no relationship whatsoever between Lewko and Braunstein, petitioner cannot convincingly argue that this case involves "a mere error of judgment" for which the right of recoupment has been denied (*Hurlbut v Whalen,* 58 AD2d 311, 318, mot for lv to app den 43 NY2d 643).

The determination should be confirmed, and the petition dismissed, with costs.

KANE, J. P., MIKOLL, YESAWICH, JR., and WEISS, JJ., concur.

Determination confirmed, and petition dismissed, with costs.