OPINION OF THE COURT
Leo F. Hayes, J.
The dispute presently before the court is but the latest in a series of legal encounters between plaintiff, Edgar Prue, a police officer, and his employer, the City of Syracuse. Following his acquittal on arson charges, Prue brought this lawsuit against the city for intentional infliction of mental distress and malicious prosecution. On September 14, 1983, the city was granted summary judgment against Prue on its counterclaim for unpaid real property taxes amounting to $1,313.59.
This motion has to do with the city’s method of collecting the unpaid taxes. By memorandum dated December 22, 1983, the city’s attorney directed the police department’s personnel division to withhold a substantial portion of Prue’s first three 1984 paychecks. The plan was to withhold $550 from the first two checks — about 60% of Prue’s gross pay — and $371.22 from the third. A copy of this directive was sent to Prue’s attorney “as a courtesy”. Not *1037 wishing to “chill the Holiday spirit” by deducting the better part of plaintiff’s pay just before Christmas, the Assistant Corporation Counsel deferred the first payroll deduction until January, 1984. In a letter dated December 27, 1983, plaintiff’s attorney questioned the city’s authority to deduct more than 10% of Prue’s salary and further questioned the calculations on the judgment roll.
The Assistant Corporation Counsel says he explained to Prue’s attorney by telephone that the city was exercising its common-law right of setoff and that is why the statutory limitations did not apply. He also claims that he held out the possibility of altering the payment schedule if Prue could document how the city’s plan would cause him financial hardship.
This motion to enjoin was brought when the city deducted the scheduled $550 from Prue’s first 1984 paycheck.
The city says it has every right to offset Prue’s tax debt against his current wages. Prue contends that the city cannot deduct more than the maximum amounts specified by State and Federal law for the collection of money judgments.
A creditor seeking to enforce a money judgment by means of wage deduction is normally limited to 25% of the debtor’s disposable earnings under Federal law (US Code, tit 15, § 1673) or any lesser percentage specified by State law (US Code, tit 15, § 1677). In this State CPLR 5205 (subd [d], par 2) exempts 90% of the judgment debtor’s earnings.[1]
Although Prue strenuously argues that the protective legislation just cited has supplanted the traditional common-law right of setoff, the evidence for that proposition is lacking.
We start with the well-known presumption that no change in common law is intended unless the Legislature clearly expresses such a purpose (McKinney’s Cons Laws of NY, Book 1, Statutes, § 301). The State and Federal legislation places limits on judgment creditors who employ one of the judicial enforcement devices (e.g., garnishment, income execution). These statutes do not purport to abrogate *1038 the common-law right of a creditor to utilize the nonjudicial remedy of setoff (see Atwater v Roudebush, 452 F Supp 622, 631). Absent clear-cut language to the contrary we must assume that the Legislature did not intend to impair a creditor’s common-law remedy.
However, the constitutional requirement of “procedural due process imposes constraints on governmental decisions that deprive individuals of liberty or property interests”. (Atwater v Roudebush, supra, at p 626.) How those constraints materialize in any given case depends on three factors:
1. the private interest that will be affected by the official action;
2. the risk of erroneous deprivation given the procedures used; and
3. the governmental interest at stake. (Mathews v Eldridge, 424 US 319, 335.)
In this case the private interest at stake is considerable. A man’s wages are a “specialized type of property presenting distinct problems in our economic system” (Sniadach v Family Fin. Corp., 395 US 337, 340). By and large, working people depend on their paychecks to provide the necessities of life not only for themselves, but for their family.[2]
Counterbalancing the private interest at stake, what pressing governmental need required the city to abandon its usual means of collecting back taxes in favor of the procedure used here? Although the city has a legitimate interest in collecting its tax revenues, a balance should be struck between the city’s need to collect taxes and the interests of the delinquent taxpayer.
Unless the circumstances make it impractical, the Constitution requires a predeprivation notice and opportunity to be heard (see Logan v Zimmerman Brush Co., 455 US 422). That means at a bare minimum that one should have access to the information relied upon by the decision maker (the city), an opportunity to submit evidence or arguments prior to a final decision, and one should be informed of his right to administrative review (Atwater v Roudebush, 452 F Supp 622, 631, supra).
*1039 Under all the circumstances here, it appears that the city’s offer to consider an alternate payment schedule — after it had apparently unilaterally decided the issue — seems to fall short of what is required. Here the effort to involve the petitioner in the decision-making process appears to be an afterthought designed to give the appearance of openness to a closed issue.
With none of the safeguards characteristic of the various judicial remedies, the set-off device must be closely monitored to assure fundamental fairness. Especially is this so where, as here, there is no procedure for an immediate postdeprivation hearing or administrative review (Mattern v Weinberger, 519 F2d 150, 160-161).
Accordingly, the motion to enjoin the city is granted.

. Additional amounts may be deducted in certain cases involving child support orders (see Matter of Liedka v Liedka, 101 Misc 2d 305).

. Plaintiff supports his wife and nine children.