In the Matter of ELAINE A. LEIRER, Respondent, v JOSEPH R. CAPUTO, as Comptroller of the County of Suffolk, et al., Appellants.

Second Department, June 22, 1992

### APPEARANCES OF COUNSEL

*Robert J. Cimino, County Attorney (Joyce D. Long* of counsel), for appellants.

*Stewart Krupin* for respondent.

### OPINION OF THE COURT

SULLIVAN, J.

In the present appeal, we are called upon to determine whether the appellant Comptroller of the County of Suffolk possesses the inherent authority, pursuant to his express duties as the chief fiscal officer of the County, to recoup alleged salary overpayments from the wages of a County employee. We conclude that the Comptroller has such authority.

### I.

The petitioner is employed as the Senior Deputy County Clerk of Suffolk County, a position she has held since April 1985. Based on alleged reports that the petitioner was frequently absent from her worksite, the Comptroller conducted an on-site audit of the petitioner's work attendance from September 1, 1987, through January 8, 1989. By letter dated May 9, 1989, the Comptroller's office sent the petitioner a copy of the final audit report. Copies were also filed with all County legislators, as required by Suffolk County Charter article V. The final audit report found that the petitioner had been absent without authorization for a total of 665 hours, and thus had received an overpayment of $13,614.90 in unearned

wages. The conclusion in the report was that the petitioner should repay her unearned wages to the County, and directed her to sign a confession of judgment in the sum of $13,614.90. It is undisputed that when the petitioner refused to sign the confession of judgment, the Comptroller began withholding $200 from each paycheck, or 10% of the petitioner's salary, from May 28, 1989, pursuant to the recommendation of the audit report.

The petitioner commenced the instant proceeding pursuant to CPLR article 78, seeking a judgment pursuant to CPLR 7803 (2) prohibiting the appellants from recouping moneys from her paychecks and declaring that the withholding of her wages without prior judicial approval was unconstitutional and unlawful. The Supreme Court determined, *inter alia,* that the appellants had acted in excess of their jurisdiction, and therefore granted the petitioner's request for relief in the nature of prohibition. Additionally, the court converted the petitioner's request for declaratory relief into a plenary declaratory judgment action, severed the appellants' counterclaim for $13,614.90, and directed that the counterclaim be continued as part of the declaratory judgment action. Upon reargument and renewal, the court adhered to that determination.

The court's finding that the Comptroller acted in excess of his jurisdiction was premised upon its finding that the Comptroller had no authority to withhold wages for recoupment because neither the Suffolk County Charter nor any other legislative enactment expressly confers such power upon him. Moreover, the court reasoned that the recoupment was improper because the Comptroller did not comply with certain provisions of the Charter and did not obtain legislative approval for the implementation of the recoupment plan. We disagree.

## II.

Admittedly, there is little decisional law upon which to draw in resolving the instant controversy. Nevertheless, a limited body of cases proves instructive with regard to the issue of recoupment. Chief among these is *Matter of Carlon v Regan* (98 AD2d 544, *mod* 63 NY2d 1011). In that case, the petitioner recovered a substantial damage award against the State of New York. The State Comptroller subsequently asserted a setoff against that award in order to recoup public

funds which had been expended for unrelated mental health care and treatment of the petitioner. The petitioner commenced a proceeding to compel the payment of the award in full, but the Appellate Division, Third Department, dismissed the petition, finding that while no provision of the Mental Hygiene Law "expressly or implicitly authorizes the Comptroller to use a setoff for the purpose of collecting fees * * * the Comptroller possesses the authority to do so as a function of his constitutional and statutory duty to audit all vouchers before payment" *(Matter of Carlon v Regan,* 98 AD2d 544, 546, *supra).* The court observed that "[t]he Comptroller had not only the authority, but also the duty, to make the setoff" *(Matter of Carlon v Regan, supra,* at 547), and further noted that the petitioner's recourse was to commence a proceeding pursuant to CPLR article 78 to review the Comptroller's audit of the amounts expended on his behalf. On appeal, the Court of Appeals modified the amount of the setoff but otherwise agreed in all respects with the reasoning in the decision of the Appellate Division *(see, Matter of Carlon v Regan,* 63 NY2d 1011, *supra).*

The authority to recoup grows out of the recognized principle that public moneys which are erroneously or mistakenly paid out must be recoverable. Indeed, it is well settled that "[t]here exists a strong, defined public policy of this State to recover public funds improperly received" *(Matter of Cortlandt Nursing Home v Axelrod,* 66 NY2d 169, 182, *cert denied* 476 US 1115; *see, Matter of Couch v Perales,* 78 NY2d 595; *Matter of Daleview Nursing Home v Axelrod,* 62 NY2d 30; *Matter of Shufelt v Beaudoin,* 116 AD2d 422). Hence, in *Matter of Daleview Nursing Home v Axelrod (supra,* at 33), the Court of Appeals permitted the Commissioner of Health of the State of New York to recoup overpayments of Medicaid reimbursements made to a nursing home by reducing future reimbursements, observing that there is a "common-law right of action * * * long recognized in this State * * * to recover an overpayment of governmental moneys". Similarly, in *Matter of Shufelt v Beaudoin (supra),* a case involving the erroneous overpayment of a shelter allowance to a public assistance recipient, the Commissioner of the Rensselaer County Department of Social Services proceeded to recover an overpayment by reducing the recipient's monthly public assistance grant. In upholding the Commissioner's action, the Appellate Division, Third Department, noted that the strong public policy favor-

ing the recovery of improperly received public funds "provides ample and legitimate justification for the concept of recoupment" *(Matter of Shufelt v Beaudoin, supra,* at 425). The same reasoning was employed in *Matter of Mayflower Nursing Home v Office of Health Sys. Mgt.* (88 AD2d 192, *affd* 59 NY2d 935), where, following an audit, certain Medicaid reimbursements were withheld from a nursing home in order to recover for rental subsidy overpayments which the nursing home had received. Finding that the policy of recovering public funds was paramount, the Appellate Division, Third Department, found that "errors by State employees cannot bind the State or prevent recoupment of unauthorized payments" *(Matter of Mayflower Nursing Home v Office of Health Sys. Mgt., supra,* at 196).

The appellant County of Suffolk, by virtue of its status as a governmental entity, shares this strong public policy. Likewise, as the County's chief fiscal officer, the Comptroller has been charged with the statutory duty, *inter alia,* to "certify the correctness of payrolls for the payment of salaries of officers and employees paid from county funds" (County Law § 577 [1] [i]).[1] Moreover, the Suffolk County Charter requires that, among other obligations, the Comptroller must "[e]xamine, audit and verify all books, records and accounts kept by the various administrative units, departments, offices or officials paid from county funds" and "[a]udit and approve all bills, invoices, payrolls and other evidences of claims, demands or charges against the county * * * and determine the regularity, legality and correctness of the same" (Suffolk County Charter, art V, § C5-2 [B], [E]). Contrary to the conclusion of the Supreme Court and our dissenting colleague, the Comptroller did not need express legislative authority in order to recoup the funds at issue in this case. Rather, he possesses the inherent common-law authority to formulate and implement a plan of recoupment as a function of his constitutional and statutory duties. Accordingly, we find that in order to fulfill the foregoing duties, and consonant with his continuing obligation to safeguard the public fisc, the Comptroller has a common-law right to recoupment which is to be exercised when an audit reveals the erroneous or improper payment of

1. There can be little argument that the Comptroller could have refused to certify payment to the petitioner if he had been aware of the petitioner's absences from work when the payrolls were submitted.

public funds *(see, Matter of Carlon v Regan,* 63 NY2d 1011, *supra).*[2]

We are cognizant of the fact, accurately noted in the dissent, that none of the foregoing decisions involved an attempt to recoup purported salary overpayments. Nevertheless, we cannot so easily dismiss their relevance to the matter before us on this basis. By focusing upon the broad powers which the Comptroller possesses with respect to fiscal matters, reaffirming the common-law right of recoupment, and emphasizing the policy interest in recovering improperly disbursed public funds, these decisions support our conclusion in this case that the Comptroller acted within his authority in implementing a plan of recoupment to recover the allegedly improper salary payments. Inasmuch as our courts have upheld the recoupment of improperly received governmental moneys from such varied funds as tort awards *(see, Matter of Carlon v Regan, supra),* Medicaid reimbursements *(see, Matter of Daleview Nursing Home v Axelrod,* 62 NY2d 30, *supra; Matter of Mayflower Nursing Home v Office of Health Sys. Mgt.,* 88 AD2d 192, *supra),* and even AFDC grants and public assistance grants *(see, Matter of Couch v Perales,* 78 NY2d 595, *supra; Matter of Shufelt v Beaudoin,* 116 AD2d 422, *supra),* there is no basis for concluding that wages or salaries are immune from a plan of recoupment which otherwise complies with statutory mandates *(see,* CPLR 5231).

Conversely, the lone salary recoupment case mentioned by the parties is factually inapposite to the instant controversy. In *Matter of Feinberg v Board of Educ.* (74 Misc 2d 371, *affd* 51 AD2d 548), the petitioner employee challenged the withholding of his *entire* salary as a substitute teacher in order to recoup vacation pay which he allegedly had received in error. The trial court denied a motion to dismiss the proceeding, reasoning that "[t]o sanction * * * a practice that permits withholding of *all* of an employee's earnings violates our legislative and judicially declared public policy" *(Matter of Feinberg v Board of Educ.,* 74 Misc 2d 371, 372, *supra* [emphasis supplied]). Indeed, a fair reading of that decision leads to the ineluctable conclusion that the court found fault not with the concept of recoupment, but with the implementation of a recoupment plan in that case which deprived the employee of

---

**2.** Despite the Ciceronian posture of the dissent, the question of political motivation appears to be irrelevant and inapt. The Comptroller either has the right to recoup money improperly paid to "no-show" public employees or he does not.

his *total* wages and thereby conflicted with the express policy of New York State *(see generally,* CPLR 5231; Labor Law § 193; *but see,* Labor Law § 190 [3]). This was made clear by the decision of this court affirming the judgment, in which we observed that "there is no authority to support [the] *method* of recoupment" which was employed therein *(Matter of Feinberg v Board of Educ.,* 51 AD2d 548, *supra* [emphasis supplied]). This critical distinction between the power to recoup in general and the utilization of a specific plan whereby that power is exercised in a given case was observed in *Salling v Koch* (115 Misc 2d 514). There, the City of New York engaged in the recoupment of salary overpayments pursuant to the parties' collective bargaining agreement by withholding a small percentage of each affected employee's paycheck until the full amount was recovered. The court held that the limited reduction in wages was not invalid merely because it was not preceded by a hearing. Moreover, the court distinguished the decision in *Matter of Feinberg (supra)* by noting that "[i]n *Feinberg,* it was the *manner* of the retaking rather than the right to recoup that was found to be offensive" *(Salling v Koch, supra,* at 517 [emphasis supplied]). Inasmuch as the Comptroller in the instant case is currently recouping funds by withholding an acceptable and lawful percentage of the petitioner's salary *(see generally,* CPLR 5231), the decision in *Matter of Feinberg (supra)* poses no impediment to his actions.

## III.

Notwithstanding the foregoing, both the petitioner and our dissenting colleague maintain that the Comptroller failed to comply with the procedural requirements of the Suffolk County Charter, thereby rendering the recoupment plan invalid. However, the provisions of the Charter simply fail to support this assertion.

A review of the relevant provisions of the Suffolk County Charter demonstrates that they do not limit or negate the Comptroller's common-law right of recoupment. While the Charter requires that a copy of each audit report be filed with all County legislators within 30 days of its completion *(see,* Suffolk County Charter, art V, § C5-4 [A]), the evidence before us establishes that the Comptroller complied with this provision, and the Supreme Court's finding to the contrary is unsupported by the record. Furthermore, the Supreme Court's determination that Suffolk County Charter article V, § C5-4

(B) and (C) mandate prior legislative approval of audit recommendations before the Comptroller may implement them finds no support in the text of those Charter provisions. Rather, those provisions read as follows:

"B. Within ninety (90) days after public release of such audit by the Department of Audit and Control or by any independent auditor on behalf of the County of Suffolk, the department head or elected official in charge of the department, agency, board or other governmental entity which was the subject matter of such audit shall appear before the committee of the Suffolk County Legislature having primary jurisdiction over such department, agency, board or governmental entity for the purpose of explaining what actions have been taken to implement the recommendations, if any, of said auditor. If no steps have been taken to implement such recommendations or if no such recommendations have been implemented, then such department head or elected official shall give an explanation as to why such recommendations have not been implemented.

"C. The Chairman of the pertinent legislative committee shall schedule such hearings as shall be necessary to fully explore and evaluate the results of such audits and the status of such recommendations and suggestions".

The clear import of the foregoing provisions is to require only that the official in charge of the governmental entity which is the subject of the audit (in this case, the County Clerk of Suffolk County) appear before a legislative committee within 90 days after public release of the audit in order to report on the actions which *have been taken* to implement the audit recommendations, and that the chairperson of the committee shall schedule such hearings on the matter as may be necessary. There is no express language impeding the Comptroller's common-law authority to recoup public funds. Indeed, the provisions clearly contemplate that some action will be taken to implement the audit recommendations *prior to* any involvement on the part of a legislative committee. Hence, we find that these Charter provisions do not mandate legislative approval before the Comptroller can exercise his common-law authority to implement a recommended plan of recoupment. Likewise, any failure on the part of County officials to comply with either of these provisions does not serve to divest the Comptroller of this authority, and the arguments in the dissent to the contrary misinterpret the plain meaning of the provisions. Accordingly, the Comptroller neither supplanted

the pertinent legislative committee nor violated the express procedures of the Charter. Rather, he acted in accordance with it by filing copies of the audit with the pertinent legislators and then implementing his recommendations. That the County Clerk and the Legislature may not have performed their duties of exploring this implementation of the recommendations does not invalidate retroactively the Comptroller's lawful actions.

## IV.

The petitioner further claims that the existence of a factual dispute regarding the amount of money owed precludes the Comptroller from implementing the plan of recoupment. She maintains, and our dissenting colleague agrees, that she was deprived of due process because she never received any meaningful opportunity to contest the Comptroller's findings and his actions. The contentions are unavailing. The petitioner was afforded the opportunity to submit evidence of her work attendance to the Comptroller and she in fact attended conferences with and submitted documentation to him in an attempt to resolve the matter prior to the issuance of the disputed audit. Having failed to persuade the Comptroller of the correctness of her position, the petitioner was not without an appropriate remedy. Indeed, it is well settled that where an individual believes that the figures set forth in an audit and the procedures employed in its preparation are erroneous, her recourse is to seek review of the audit pursuant to CPLR 7803 (3) (see, Matter of Carlon v Regan, 98 AD2d 544, supra; Board of Educ. v State of New York, 88 AD2d 1057, affd 60 NY2d 716). However, the petitioner expressly withdrew all claims for relief under CPLR 7803 (3), and as the "WHEREFORE" clause of her amended and supplemental verified petition dated July 14, 1989, makes clear, limited her remedies to relief in the nature of prohibition under CPLR 7803 (2), and a declaration that the Comptroller exceeded his authority and acted illegally. Hence, the petitioner elected to limit the scope of this proceeding by challenging only the power and authority of the Comptroller.

We further find that, inasmuch as the issue presented is solely one of law, the court should have declared the rights of the parties. Given the Comptroller's role as chief fiscal officer of the County and his common-law power and duty to recoup public moneys, we find that due process did not require him to

commence a plenary action or to await a judicial determination before exercising his authority. Accordingly, we declare that the recoupment in this case was rendered neither unconstitutional nor illegal by reason of the fact that it was not preceded by legislative or judicial approval.

Additionally, we note that while the appellants have asserted a counterclaim to recover the balance of the funds which allegedly were paid erroneously to the petitioner, the record before us does not contain adequate factual evidence to resolve the disputed claim. Accordingly, the appellants' counterclaim is severed and continued as an action at law to recover public funds.

Finally, the petitioner's claims that the Comptroller's actions are prompted by bad faith and constitute a political vendetta are irrelevant to our determination of this appeal. The issue before us is limited solely to whether the Comptroller acted lawfully and within his authority in implementing the challenged plan of recoupment.

Accordingly, the appeal from the judgment is dismissed, as the judgment was superseded by the order, made upon reargument and renewal, and the order is reversed insofar as reviewed, on the law, the first, third, fourth, and fifth decretal paragraphs of the judgment are vacated, that branch of the proceeding which was to prohibit the appellants from recouping moneys from the petitioner's wages is dismissed on the merits, that branch of the proceeding which was for declaratory relief is granted to the extent that it is declared that the appellants' recoupment of moneys from the petitioner's wages without prior judicial approval is neither unconstitutional nor unlawful, and the appellants' counterclaim is severed and continued.

ROSENBLATT, J. (dissenting). I subscribe fully to the majority's statements regarding the Comptroller's authority to protect public funds, but I cannot endorse the extension of the common-law right of recoupment to empower the Comptroller, over the petitioner's protest, to extract money from her paychecks when he lacked legal authorization, or judicial adjudication or intervention. Indeed, this appears to be the first reported adjudication in the history of American law, and perhaps the common law as well, in which the common-law right of recoupment has served to authorize an official, unilaterally, to reach into an employee's paycheck for claimed underwork. I believe that the Supreme Court was correct in holding the Comptroller's action to be illegal.

## I.

After conducting his investigation, the Comptroller, Joseph R. Caputo, concluded, in essence, that Elaine A. Leirer did not put in enough time to justify her salary as Senior Deputy County Clerk. He computed her alleged absenteeism in an audit, and determined that she should pay the County back.

He further determined that he would implement this objective by taking the money out of her salary. Ms. Leirer protested vigorously and, with counsel, immediately disputed Mr. Caputo's actions and authority, and commenced the instant proceeding and action seeking, among other things, relief pursuant to CPLR article 78. She claims that the proof and records will refute Mr. Caputo's claims and eventually bear her out, at an impartial trial, in a court of law.

Although the Comptroller, to be sure, has broad powers, I find the procedure he used to be seriously flawed in that no tribunal was convened, no witnesses were sworn, no testimony was taken by anyone, no arbitration was conducted, and no contract was relied upon. Furthermore, the procedure suffered from the absence of any judicial action or legislative approval, and the Comptroller sought none. Indeed, despite the legislative design, no review of any kind was occasioned by anyone, beyond that of Mr. Caputo himself. He alone then considered possible sanctions, weighed the appropriate penalty, and with no claimed recourse to Suffolk County precedent, proceeded to carry it out, determining that 10% of Ms. Leirer's paychecks was apt.

Beyond what I would judge to be the absence of legal procedures to support the Comptroller's actions under any circumstances, there is another facet to this case, and a troubling one. Ms. Leirer states that she had served as the chairperson of a political party, and in that capacity had worked against Mr. Caputo's candidacy in a primary for Suffolk County Executive. She claims that Mr. Caputo is retaliating against her. She alleges that the timing of the onset of the audit reveals as much. In the record she includes an exhibit, a Newsday article dated September 23, 1988, in which Mr. Caputo attacks her in headlines entitled "County Aide Accused of Absences From Job. Caputo Accuses County Aide of Absences". She stresses that Mr. Caputo made these public accusations seven months before his final audit report, which he released in early May of 1989. Although this aspect of the case is not easily put aside, I would conclude that the

Comptroller's actions were illegal even if we assume his motives to have been entirely proper.

The majority, in sustaining his actions, maintains that the Comptroller did not need express legislative authority to dock Ms. Leirer's salary, and that his power to do so springs from his common-law authority and duty to safeguard public funds. In my view, the Comptroller violated express provisions of the Suffolk County Charter, rendering his actions illegal. Moreover, there are several reasons why the invocation of the common-law right of recoupment to sustain the Comptroller's actions amounts to an unwarranted extension of that doctrine.

## II.

The Suffolk County Charter does not recognize, expressly or impliedly, the doctrine of "recoupment" by authorizing the docking of employees' pay. Nowhere in the Charter do the words "recoupment" or any comparable words or concepts appear. Nowhere in the Charter is a fiscal officer given the power to invade the paycheck of an employee upon a claim of the kind involved here.

The Suffolk County Charter provision cited by the majority (Suffolk County Charter art V, § C5-2) spells out the Comptroller's duties and limitations (see also, Matter of Cohalan v Caputo, 94 AD2d 742), and Suffolk County Charter article V, § C5-4 (B) contemplates a procedure by which the Comptroller's office performs and releases audits, following which the *department head* is required to appear before the County Legislature "for the purpose of explaining what actions have been taken to implement the recommendations" of the Comptroller or to explain why the recommendations were not implemented, if that be the case. This procedure was not followed.

The department head (here, the County Clerk) did not appear before the County Legislature, and the Legislature itself never even acted on, let alone approved, Mr. Caputo's audit recommendations. Under Suffolk County Charter, article V, § C5-4 (C), the "Chairman of the pertinent legislative committee" is authorized to schedule legislative hearings to "fully explore and evaluate" the Comptroller's "recommendations and suggestions". The Legislature, however, took no action and never scheduled or conducted any hearings. The pertinent legislative chairman is not even identified. Despite

the express format by which the Legislature is empowered to explore and evaluate the Comptroller's recommendations, nothing was explored, and nothing was evaluated. The Suffolk County Charter spells out the duties of the Comptroller in relation to the County Legislature. Just as the Comptroller may not exceed his statutory authority to refuse to encumber money appropriated by the Legislature *(Matter of Cohalan v Caputo, supra)*, the Comptroller may not disregard the express provisions of the statutory design relative to his audit recommendations.

Mr. Caputo, however, on his own, supplanted the Legislature and carried out his own "recommendations", docking Ms. Leirer's pay. The Comptroller's power to recommend and suggest, however, is not the power to garnish or seize. In all, Mr. Caputo acted as claimant, investigator, auditor, accuser, prosecutor, and Judge, and then meted out punishment. In my view, his actions were illegal, and constituted a violation of the Charter's express procedure and an unprecedented abrogation of due process. Nor may his actions be upheld under the common-law right of recoupment.

## III.

The common-law right of recoupment "had its origin in judicial decision and was confined to actions upon contract where the defendant might set up as a defense damage occurring to himself by the breach on the part of the plaintiff of the same contract. It was merely a defense, however, and could do no more than defeat the plaintiff's recovery and so, even where the defendant showed damages exceeding those of the plaintiff, he could not get affirmative relief in recoupment" (Note, *Procedure: Meaning of Recoupment, Counterclaim and Set-off under the Code of Civil Procedure,* 1 Cornell L Q 198 [1916]).

Common-law recoupment has consistently been regarded as "a defense arising out of some feature of the transaction upon which plaintiff's action is grounded" (4 Carmody-Wait, NY Prac, Counterclaim, § 16, at 451; *Bull v United States,* 295 US 247, 262; *see also,* Annotation, *Claim barred by limitation as subject of setoff, counterclaim, recoupment, cross bill or cross action,* 1 ALR2d 630, 666-680). It was not designed to avoid litigation by unilateral action or self help. To qualify, a recoupment claim had to arise out of the same transaction that constituted the claim of the party who *brought suit (see,*

*Seymour v Davis,* 2 Sandf 239; *Deming v Kemp,* 4 Sandf 147; 3 Sedgwick, Damages § 1033, at 2159 [9th ed]).[1]

I have not discovered and have not been informed of any instance in which recoupment at common law or by statute was ever employed as a substitute for litigation, by the expedient of seizing a wage earner's salary for alleged underwork, as opposed to suing for it or pleading recoupment when sued *(see generally,* Annotation, *Breach of executory contract occurring after assignment of a right thereunder as subject of recoupment against assignee,* 87 ALR 187).

Because common-law recoupment involved "a mere right of reduction from the amount of the plaintiff's recovery, on the ground that his damages were not really as high as he alleged" (3 Sedgwick, Damages § 1034, at 2162 [9th ed]), it was strictly a *pleading* device (3 Sedgwick, Damages § 1046, at 2182 [9th ed]), defensive in nature *(Peuser v Marsh,* 218 NY 505, 507), and to be tested in court *(Ives v Van Epps,* 22 Wend 155, 156). More recent commentators have also confirmed that the common-law right of recoupment could not produce an affirmative recovery *(see,* Murphy, *Sidetracking the FELA: The Railroads' Property Damage Claims,* 69 Minn L Rev 349), nor could it generate affirmative relief *(see,* Sepinuck, *The Problems with Setoff: A Proposed Legislative Solution,* 30 Wm & Mary L Rev 51, 113 [1988]).

A review of the principles and cases under common-law recoupment makes it plain that the doctrine was neither used nor contemplated for purposes anything like those involved here, and I submit that this ground breaking is inappropriate.

The majority, identifying the common-law right of recoupment, cites a number of cases to support its holding, and relies chiefly on *Matter of Carlon v Regan* (98 AD2d 544, *mod* 63 NY2d 1011).

*Carlon (supra)* however, involved a negligence and malprac-

---

1. The common-law right of recoupment has evolved into statute in New York, culminating in CPLR 3019 (a). The 1848 Code of Procedure codified rules relative to actions that entailed setoffs, counterclaims, the recoupments, and those rules were carried into former Code of Civil Procedure § 501 to "promote justice and diminish circuity of litigation" *(Seibert v Dunn,* 216 NY 237, 245). In New York, CPLR 3019 (a) and its predecessor, former Civil Practice Act § 266 finally eliminated the historic limitations on set offs, which are claims unconnected with the plaintiff's cause *(see, Otto v Lincoln Sav. Bank,* 268 App Div 400, *affd* 294 NY 798), and recoupments *(Getlan v Hofstra Univ.,* 41 AD2d 830; *see also,* 3 Weinstein-Korn-Miller, NY Civ Prac ¶ 3019.02).

tice lawsuit against the State, arising out of a patient's 22-year confinement at psychiatric facilities. The plaintiff was awarded damages, and the State was allowed to set off against them its claim for services, which the patient acknowledged and did not dispute as to its reasonableness or adequacy. The common-law right of recoupment is not mentioned in either the decision of the Appellate Division or the decision of the Court of Appeals in that case.

Other cases cited by the majority *(see, Matter of Cortlandt Nursing Home v Axelrod,* 66 NY2d 169, 182, *cert denied* 476 US 1115; *Matter of Daleview Nursing Home v Axelrod,* 62 NY2d 30)* involved the power of the New York Commissioner of Health to recoup medical overpayments improperly or erroneously made to nursing homes as health care providers *(see also, Matter of Klein v Axelrod,* 69 NY2d 639; *Matter of Westledge Nursing Home v Axelrod,* 68 NY2d 862; *Matter of Sreter v Axelrod,* 67 NY2d 864; *Matter of Cattaraugas County Nursing Home v Axelrod,* 66 NY2d 1022; *Matter of Mayflower Nursing Home v Office of Health Sys. Mgt.,* 88 AD2d 192, *affd* 59 NY2d 935; *Matter of Fahey v Whalen,* 84 Misc 2d 1040, *affd* 54 AD2d 1097). In contrast to the case before us, those decisions involve entirely different considerations, and implicate vastly different relationships, amid a host of elaborate procedures and regulations that govern reimbursement and adjustment of accounts and payments to nursing homes. Similarly, in *Matter of Shufelt v Beaudoin* (116 AD2d 422) the Rensselaer County Department of Social Services was allowed to recoup moneys paid, undeniably in error, to a public assistance recipient *(see also, Matter of Couch v Perales,* 78 NY2d 595).

The Comptroller cites a number of other recoupment cases, only one of which, *Salling v Koch* (115 Misc 2d 514), involves salary recoupment. The decision, I believe, is not on point, and merely supports the recoupment of sums mistakenly paid and retrievable by the express terms of a collective bargaining contract. There is no such contract here, and we are dealing not with a mistake, but with challenged claims of underwork.

The only other salary recoupment case in New York is *Matter of Feinberg v Board of Educ.* (74 Misc 2d 371, *affd* 51 AD2d 548), which is instructive. In *Feinberg,* the employer Board sought to recoup overpayments *mistakenly* made to a teacher, for vacation pay to which the Board claimed the teacher was not entitled. The Board recouped the money in its entirety, and the Supreme Court directed that the Board

return the money to the teacher. We affirmed, holding that the Board's method of recoupment was illegal, and that the Board could bring a plenary suit.

As the majority points out, the *Feinberg* decision *(supra)* does not expressly reject the doctrine of salary recoupment. But it certainly does not support it. The *Feinberg* case dealt only with the method of recoupment of the salary in its entirety, a method we found to be illegal. Notably, the *Feinberg* court did not order or endorse even a partial recoupment, but instead ordered that the money be returned, and held that a plenary trial was the proper way to retrieve what the authorities claimed to be *mistakenly* paid wages. I believe that approach to be the proper one.

I agree with the majority that Ms. Leirer has expressly limited this proceeding to the legal question of whether the Comptroller's actions were proper, and that no issue regarding the factual accuracy of the audit is before the court. However, I believe that the Comptroller's actions were improper regardless of the factual issues involved, such as the number of hours worked or not worked by Ms. Leirer. Accordingly, I would grant her the declaratory relief sought, because that involves legal considerations only, and would leave the factual disputes to plenary adjudication.[2]

## IV.

Unilateral salary docking, unsupported by legal process and carried out in the name of the common-law right of recoupment, brings with it the potential for unchecked abuse of power, vendettas, and political reprisal, if not in this instance then certainly in others. If employees or officials are believed to be lazy or errant, there are wholly lawful ways of dealing with that, and proper action should be taken diligently. The actions under review were not proper or lawful, and for that reason I would grant the petitioner the declaratory relief she

---

2. It would have been neither necessary nor appropriate for Ms. Leirer to start a proceeding pursuant to CPLR article 78 to challenge the audit when it was rendered. At that time the Comptroller had merely generated a document which, by law, was no more than a recommendation to be followed or not followed by the County Legislature. It was when the Comptroller acted unlawfully on his own recommendation and took Ms. Leirer's salary that she invoked CPLR article 78 to challenge his actions, and properly so. Under the circumstances, Ms. Leirer was under no obligation to initiate litigation and challenge an audit or persuade the Comptroller to refrain from committing an illegal seizure of part of her salary.

sought, without prejudice to the institution of a plenary suit by the Comptroller, the procedure that our court endorsed in *Feinberg (supra)*. In this manner, the parties may air fully their respective claims.

Accordingly, I vote to dismiss the appeal from the judgment, on the ground that it was superseded by the order made upon reargument and renewal, and to modify the order by granting the petitioner the declaratory relief she sought, without prejudice to the institution of a plenary suit by the Comptroller.

MANGANO, P. J., and O'BRIEN, J., concur with SULLIVAN, J.; ROSENBLATT, J., dissents in a separate opinion.

Ordered that the appeal from the judgment is dismissed, as the judgment was superseded by the order made upon reargument and renewal; and it is further,

Ordered that the order is reversed insofar as reviewed, on the law, the first, third, fourth, and fifth decretal paragraphs of the judgment are vacated, that branch of the proceeding which was to prohibit the appellants from recouping moneys from the petitioner's wages is dismissed on the merits, that branch of the proceeding which was for declaratory relief is granted to the extent that it is declared that the appellants' recoupment of moneys from the petitioner's wages without prior judicial approval is neither unconstitutional nor unlawful, and the appellants' counterclaim is severed and continued; and it is further,

Ordered that the appellants are awarded one bill of costs.