OPINION OF THE COURT
Joseph Harris, J.
Petitioner seeks judgment, pursuant to CPLR article 78, declaring null and void, as arbitrary and capricious, and in violation of due process, respondents’ determination to set off and recoup from petitioner’s lump-sum separation from service entitlement, monies alleged to have been overpaid petitioner due to his submission of allegedly fraudulent time sheets and remanding the matter back for a hearing before the respondents.
In support of the relief requested, the petitioner contends that the Office of General Services (hereinafter referred to as OGS) lacked the authority to reduce petitioner’s severance pay entitlement; that the Comptroller’s reduction of petitioner’s severance entitlement violated section 200 (3) (b) (iii) of the New York State Finance Law; and the procedure utilized to recoup the monies allegedly owed violated petitioner’s fundamental due process rights.
It is beyond question that the Comptroller has the inherent authority, pursuant to his duties as the State’s chief fiscal officer, to offset valid claims of the State of New York against claims made against the State. In the case of Williams Press v State of New York (45 AD2d 397), the Court sustained the Comptroller’s action, in offsetting overpayments made to the claimant under past contracts against current bills for services performed, against a procedural due process challenge, stating that (supra, at 403): " 'Since the Comptroller acts for the State in its fiscal affairs generally, and since the payment of any money under the control of the State is void unless approved by his audit * * * it would seem that he has the right to offset any valid claim of the State against one to whom money under his control is due from the State.’ ” (Emphasis added.)
This recoupment and offset authority is derived from the Comptroller’s "constitutional and statutory duty to audit all vouchers before payment (NY Const, art V, § 1; State Finance Law, § 8 * * *)” (Matter of Carlon v Regan, 98 AD2d 544, 546, affd as mod 63 NY2d 1011). Moreover, it is clear from both the New York State Constitution and case law that the Comptroller, "in the exercise of his power to audit acts in a *151 quasi-judicial capacity” (City of New York v State of New York, 40 NY2d 659, 667), may hear, examine, pass upon, settle, and adjust and issue opinions respecting claims against the State fisc. (People ex rel. Grannis v Roberts, 163 NY 70.) Acting in this capacity the Comptroller has both the right, and indeed the duty, to render a due process determination as to the validity of the State’s claim and whether an offset is appropriate.
Contrary to petitioner’s claim, section 200 (3) of the New York State Finance Law[1] is consistent with and does not purport to abrogate the Comptroller’s common-law right of setoff in this particular circumstance. (See, Van Amerogen v Donnini, 78 NY2d 880, 885 [Bellacosa, J., dissenting] [holding that "statutes which derogate from common law are * * * to be strictly construed”]; McKinney’s Cons Laws of NY, Book 1, Statutes § 301.) Here, respondent’s alleged overpayment is not claimed to have resulted from the State’s "administrative error”, but is alleged to have been induced by the petitioner’s submission of fraudulent time sheets, claiming unearned overtime pay. As such, the conduct complained of does not appear to fall within the ambit of section 200 (3) (a) of the State Finance Law. Moreover, even if the alleged overpayment could be construed to have resulted from the Comptroller’s error, petitioner’s conduct, in submitting allegedly false vouchers, falls within the exceptions of both section 200 (3) (b) (ii) and (iii) of the State Finance Law and thus would not diminish the Comptroller’s recoupment authority.
While petitioner’s salary entitlement constitutes an important and significant property interest, the nature of this interest, as salary, does not insulate it from setoff. (Matter of Leirer v Caputo, 181 AD2d 119.) In Leirer (supra, at 120-121), *152 the Appellate Division, Second Department, held that the Suffolk County Comptroller possessed "the inherent authority, pursuant to his express duties as the chief fiscal officer of the County, to recoup alleged salary overpayments from the wages of a County employee” who the Comptroller determined "had been absent without authorization for a total of 665 hours, and thus had received an overpayment of $13,614.90 in unearned wages.”
In reaching this determination, however, the Court emphasized the facts that the petitioner had been afforded the opportunity to submit evidence of her work attendance, attend conferences with and submit documentation to the Comptroller in an attempt to resolve the matter, prior to the Comptroller rendering his determination regarding the validity of the County’s claim against the petitioner. (Supra, at 127.) Thus while the Comptroller has the inherent authority to recoup an overpayment made to an employee from the employee’s salary, it is evident that a condition precedent to the right of recoupment is a quasi-judicial, due process determination by the Comptroller that there exists a valid claim subject to recoupment. (See, Matter of Leirer v Caputo, 181 AD2d 119, supra; Prue v City of Syracuse, 124 Misc 2d 1036.) Unlike the petitioner in Leirer (supra), however, the instant petitioner was never given notice of the Comptroller’s audit of his payroll account or intent to offset the claim for overtime overpayment against his severance allowance until after the Comptroller’s action was a fait accompli. Nor was the petitioner afforded a meaningful opportunity to submit evidence or arguments in opposition to the Comptroller’s action. Nor did he have a meaningful opportunity to be heard by the agency by which he was employed before that agency requested the offset from the Comptroller.
Prior to March of 1991, the petitioner was employed as a tandem trailer operator with OGS at the Upstate Distribution Center in Rotterdam, New York. At all times herein relevant, petitioner was also a member of a bargaining unit exclusively represented by the Civil Service Employees Association, Inc. (hereinafter referred to as CSEA), and was subject to article 33 of the collective bargaining agreement negotiated by CSEA on his behalf.
On March 7, 1991, petitioner was served with a notice of discipline under article 33 of the collective bargaining agreement, charging him with submitting fraudulent time sheets and which further claimed that this submission resulted in *153 petitioner being paid for 61 hours of unearned overtime for the period April 27 through October 23, 1990. The notice of discipline, in accord with the penalties authorized by section 33.3 (a) (1) of the collective bargaining agreement,[2] sought termination of petitioner’s employment and rescission of his accrued leave credits. While requesting restitution of $1,385.31, the notice of discipline expressly recognized that "restitution * * * [was] not * * * [an authorized] penalty”.
On March 9, 1991, petitioner filed an employee grievance, challenging the OGS disciplinary action, wherein he stated that the ~charges are unfounded".[3] The petitioner voluntarily retired from State service on March 27, 1991. Thereafter an ~agency level meeting" was held between the representative of OGS and petitioner's representative on April 3, 1991, to discuss resolution of the pending disciplinary charges. (See, collective bargaining agreement § 33.3 [d].) While the parties dispute what was said at this meeting and the record is silent as to whether OGS in fact formally withdrew the notice of discipline against the petitioner, it is clear, that in view of petitioner's retirement, OGS abandoned the disciplinary action by failing to issue a written agency response[4] and failing to request the appointment of an arbitrator.[5]
In lieu of pursuing the disciplinary proceeding filed against *154 the petitioner, David T. Flaherty, the OGS labor relations representative responsible for handling petitioner’s case, unilaterally directed on April 5, 1991, that the OGS Payroll Unit initiate action to recoup the alleged salary overpayments from petitioner’s severance entitlement. After reviewing Mr. Flaherty’s calculations, the OGS Payroll Unit again unilaterally confirmed the overtime overpayments made to the petitioner. The OGS Payroll Unit then forwarded a Payroll and Personnel Transaction Form PR-75, which incorporated the deduction of $1,385.31 in unearned overtime from the petitioner’s lump-sum accrual entitlement as initially determined by Mr. Flaherty. Following its review of the OGS payroll submission, the Comptroller, without notifying petitioner of the contemplated action, and without affording him an opportunity to be heard and present evidence, approved the requested overtime adjustment of $1,385.31 and recouped this amount from the severance payment made to the petitioner. By letter dated April 24, 1991, Mr. Flaherty notified the petitioner that his lump-sum payment for vacation accruals had "been reduced by $1,385.31 as restitution for overpayment/overtime” which was claimed by the petitioner and paid by OGS. Mr. Flaherty further invited the petitioner or his CSEA representative to "discuss the matter” with him by telephone should they so desire.
Weighing the considerable interest of the petitioner in receiving his wages and salary entitlements (Prue v City of Syracuse, 124 Misc 2d 1036, supra) and the potential for an erroneous determination where, as here, the audit involves claims of fraud and is conducted upon a one-sided record, against the negligible burden imposed upon the Comptroller if the petitioner were afforded notice and opportunity to be heard prior to completion of the audit and the imposition of recoupment, the court finds that minimal notions of due process required that petitioner be given notice of the Comptroller’s proposed action and an opportunity to be heard prior to the utilization of the recoupment remedy (cf., Morrissey v Brewer, 408 US 471, 494 [Douglas, J., dissenting in part]; Matter of Deas v Levitt, 139 AD2d 1, 6; Matter of Leirer v Caputo, 181 AD2d 119; Prue v City of Syracuse, 124 Misc 2d 1036, supra; Matter of Feinberg v Board of Educ., 74 Misc 2d 371, affd 51 AD2d 548).
Recoupment and setoff are in reality procedural powers processed by the Comptroller to be utilized only after a proper exercise of the Comptroller’s substantive powers to determine *155 the validity of claims. It would be unconstitutional and antithetical to a government of ordered liberty for recoupment to be used to collect "invalid” claims, or claims the validity of which has not been determined by due process procedures. This does not in all cases require a full plenary hearing, but it does require notice and a meaningful opportunity to be heard.
Here, respondents’ actions effectively deprived the petitioner of any meaningful opportunity to contest the recoupment of overtime restitution from the petitioner’s salary. Respondent’s claim that petitioner was afforded an opportunity to contest the validity of respondents’ entitlement to restitution within the context of the collective bargaining agreement disciplinary action is not supported by the record. While a disciplinary proceeding under article 33 of the collective bargaining agreement normally results in either a consent agreement or an arbitrator’s determination, the instant proceeding was abandoned by OGS and never resulted in a due process determination of the validity of respondent’s claim that petitioner owed the State money. Despite its abandonment of the disciplinary proceeding, OGS purported to raise itself by its own bootstraps by requesting that the Comptroller recoup monies that the agency merely believed were owed. It was an unwarranted quantum leap from OGS’s own determination to abandon the disciplinary action which thwarted the petitioner’s opportunity to be heard, for Flaherty to conclude that the State was owed money by the petitioner and had a right to collect by recoupment. Nor was the petitioner afforded notice and an opportunity to be heard at the Comptroller’s level. Indeed, throughout the entire process, the petitioner was never given a chance to challenge the claim that he had received unwarranted overtime pay and was thus deprived of his due process entitlements to notice and an opportunity to be heard. This being the case, the court finds that the respondents’ powers were exercised arbitrarily and capriciously.
Accordingly, the petition is granted to the extent that the matter is remanded to the Comptroller forthwith for further proceedings, at which the petitioner will forthwith be afforded the opportunity to present evidence and argument on his behalf and to defend against respondent’s claims. The Comptroller is not required, at this time, to repay the amount withheld from the petitioner, but if further action of the Comptroller pursuant to the mandate of the decision of the *156 court, and upon the commencement of a new article 78 proceeding, is determined to be arbitrary and capricious, or if petitioner proves, upon remand, that he does not owe the State money, payment can be thereupon directed, together with interest, thereby making the petitioner whole.

. Section 200 (3) of the State Finance Law provides, in pertinent part, that "(a) In any case where a state employee has, as a result of an administrative error by the state, received salary in excess of that to which he or she was entitled, the state will not attempt to recover such overpayment, except in those cases described in paragraph (b) of this subdivision” (emphasis added).
Section 200 (3) (b) of the State Finance Law, further provides that "[njothing contained in paragraph (a) of this subdivision shall prevent the state from recovering, by offset or otherwise, any overpayment made * * * (ii) for a period when the employee was neither performing services for the state nor on approved leave or (iii) under circumstances where the comptroller reasonably determines that the employee knew, or * * * should have known, that the salary paid to him or her was in excess of that which he or she was entitled to receive.”

. Section 33.3 (a) (1) of the collective bargaining agreement authorizes the penalties of "written reprimand, suspension without pay, a fine not to exceed $200.00, loss of accrued leave credits, reduction in grade or dismissal from service” within the context of a disciplinary proceeding.

. Pursuant to section 33.3 (c) of the collective bargaining agreement
"(1) If not settled or otherwise resolved, the notice of discipline may be the subject of a grievance before the department or agency head and shall be filed either in person or by certified or registered mail, return receipt requested, by the employee within fourteen (14) calendar days of service of the notice of discipline.
"(2) The timely filing of such a grievance shall constitute a demand for arbitration unless the grievance is settled or the employee elects not to pursue it.”

. Section 33.3 (e) (1) of the collective bargaining agreement provides that following an agency level meeting "A response shall be rendered in writing, if possible, in person, or by certified or registered mail, return receipt requested, no later than four (4) calendar days after such meeting. If possible, the department or agency head should render the written response at the close of such meeting.”

. Section 33.3 (e) (3) of the collective bargaining agreement provides that "unless the grievance is settled or the employee elects not to pursue it, the agency or department representative shall notify the Panel Administrator that the grievance is not resolved and request that an arbitrator be appointed and a hearing scheduled.”