OPINION OF THE COURT
Bellacosa, J.
Petitioner-appellant is a Senior Deputy County Clerk of Suffolk County. Since May 1989, the County Comptroller has been unilaterally withholding 10% from each of her current paychecks as a method of recouping wages paid to her when, allegedly, she was not on the job. An audit conducted by the respondent Comptroller estimated the total back-due sum as $13,614.90. The intertwined issues on this appeal by permission of this Court are whether the County Comptroller is invested by statute or common-law right or both with a unilateral wages recoupment power and whether statutory or common-law procedural safeguards in the exertion of such power were met.
*458 Supreme Court granted the employee’s petition precluding the use of recoupment in this case. The Appellate Division, with one Justice dissenting, reversed and insofar as pertinent, rejected the employee’s principal request for relief. We now reverse and reinstate the core determination of Supreme Court in petitioner’s favor. The County Comptroller surely possesses certain powers with respect to such fiscal matters, but they have not been invoked properly or exercised in this case with procedural regularity. Moreover, this County official cannot rely on a general, inherent common-law recoupment authority. This is not the type of case and circumstance in which that remedy may be interposed.
Appellant has been a Suffolk County employee since 1969, serving since 1978 as a Senior Deputy County Clerk. Her lawsuit challenges the County Comptroller’s actions with a sworn statement that her employee time and accrual records were always filled out accurately and properly verified and countersigned by her "designated supervisor” in the County Clerk’s office. From September 1987 to January 1989, the County Comptroller directed an "on site audit” of her work station to investigate her presence and hours of work at her desk. On September 20, 1988, she received a letter from respondent Comptroller indicating that she had unaccounted for hours on her time sheets. Her September 22 salary check was then withheld. Appellant demanded her paycheck and instituted this CPLR article 78 proceeding.
On May 9, 1989, the Comptroller released a so-called final audit report, indicating that appellant had received $13,614.90 in unearned wages going back to 1983 through 1989. The Comptroller sent appellant a copy of the audit and filed copies with the County Legislature as required by Suffolk County Charter, article V, § C5-4. Appellant declined to sign a tendered confession of judgment. On May 28, 1989, the Comptroller began withholding 10% from her biweekly paycheck, $200 per pay period. There is no indication how the unaccounted time was computed with respect to the period from 1983 through September 1987, when the on-site audit was ordered and thereafter sporadically conducted. A statement in the unofficial audit report merely recites that time and accrual records for the entire period in controversy were the only records made available by the office of the County Clerk.
Supreme Court granted the petition insofar as it sought to prohibit the Comptroller from recouping from appellant’s *459 present paychecks sums paid to her for allegedly unworked time from 1983 through 1989. The trial court dismissed the petition insofar as it sought mandamus to compel the Comptroller to release her paychecks for the weeks ending September 22, 1988 through October 16, 1988. The court converted the petition and counterclaim into a plenary declaratory judgment action in other respects, which are not now before us. Supreme Court also ordered the Comptroller to return to appellant the $3,000 in wages garnished under the 10% back-pay recoupment device.
On the Comptroller’s appeal, the Appellate Division reversed and allowed the garnishment to continue. That Court framed the issue as whether the County Comptroller "possesses the inherent authority, pursuant to his express duties as the chief fiscal officer of the County, to recoup alleged salary overpayments from the wages of a County employee,” and concluded that the Comptroller has that authority (Matter of Leirer v Caputo, 181 AD2d 119, 120).
As that Court acknowledged, there is little decisional law upon which to base such a ruling in the context of, and application to, the facts at hand. In Matter of Carlon v Regan (98 AD2d 544, affd as mod 63 NY2d 1011), this Court allowed the State to recoup funds expended for unrelated mental health care from a negligence and medical malpractice award against the State. This Court has also approved the withholding of Medicaid reimbursements to nursing homes to recoup monies wrongfully or erroneously paid (Matter of Daleview Nursing Home v Axelrod, 62 NY2d 30; Matter of Mayflower Nursing Home v Office of Health Sys. Mgt. of Dept. of Health, 88 AD2d 192, affd 59 NY2d 935) and New York courts have allowed Aid to Families with Dependent Children grants and public assistance grants to be reduced to recover erroneous overpayments (Matter of Couch v Perales, 78 NY2d 595; Matter of Shufelt v Beaudoin, 116 AD2d 422). While these precedents appear superficially to offer some support for the existence in this case of "inherent common-law authority to formulate and implement a plan of recoupment * * * when an audit reveals the erroneous or improper payment of public funds” (Matter of Leirer v Caputo, 181 AD2d, at 123-124, supra), significant distinctions abound. For example, these authorities have never been applied to recoup wages paid on certified records, as to which a controverted amount estimated to be due and owing has not been reduced to an independently established debt. Indeed, the cited cases involved erroneous *460 payments or expenditures which were, for the most part, not disputed as to amount. By sharp contrast, the employee here alleges that she properly filled out all past time sheets and had them certified by the designated supervisor in her particular office. The Comptroller, however, disputes the propriety of that certification method and interposes the desk audit to reconstruct and substitute for those regular records. In effect, the Comptroller displaces the ostensibly regular employee time certifications and then invokes a self-help recoupment remedy to reclaim past paid wages. Thus, the proffered authorities do not support this extraordinary extension in category and method of the recoupment power.
Notably, too, common-law recoupment is essentially a defensive mechanism available to a payer, interjected to offset continuing expenditures to or damage claims against a payee. It has not been traditionally allowed as a self-help recovery plan. No justification has been advanced that persuades us to allow this remedy to be invoked in these circumstances in substitution for an independent adjudicative modality of establishing a debt (e.g., by concession, agreement, litigation, or the like) before recoupment can be interposed. Simply "deeming” or estimating the amount of an alleged past debt by a unilateral audit and ukase is unwarranted.
The fact that "petitioner was afforded the opportunity to submit evidence of her work attendance to the Comptroller and she in fact attended conferences with and submitted documentation to him in an attempt to resolve the matter prior to the issuance of the disputed audit” (Matter of Leirer v Caputo, 181 AD2d, at 127, supra) does not constitute the establishment of a genuine debt or provide sufficient procedural protection before allowing the Comptroller to unilaterally initiate this recoupment remedy.
To be sure, audits are an important and appropriate mechanism, especially in connection with public expenditures and monies. But like all remedies, audits should not be telescoped and transformed into self-executing weapons. While the Comptroller, as noted in Justice Rosenblatt’s cogent dissent, has broad and important powers, the procedure he used in this matter was "seriously flawed in that no tribunal was convened, no witnesses were sworn, no testimony was taken by anyone, no arbitration was conducted, and no contract was relied upon. Furthermore, the procedure suffered from the absence of any judicial action or legislative approval, and the *461 Comptroller sought none” (Matter of Leirer v Caputo, 181 AD2d, at 129, supra [Rosenblatt, J., dissenting]).
The precise holding in this case does not diminish the importance of the audit tool in general or the particular audit procedures authorized by the Suffolk County Charter. These verifying methods reflect a necessary and proper wariness about the unauthorized expenditure of public funds and may provide a basis for appropriate action by appropriate officials. However, actions must be undertaken in conformity with procedural safeguards, designed to protect those adversely affected by such serious steps. The officious actions deployed here failed to comport with even rudimentary procedural safeguards.
We conclude also that the Suffolk County Charter offers no authority for the Comptroller’s unilateral action in this case. Article V, § C5-2 grants the County Comptroller authority to perform all the duties of the chief fiscal officer of a county under the County Law, as well as various specific powers to audit and approve expenditures and other related powers. County Law § 577 (1) (i) gives the County Comptroller the duty to "certify the correctness of payrolls for the payment of salaries of officers and employees paid from county funds”. These provisions create specific powers and responsibilities in the office of the Comptroller, but they stop short of granting a unilateral recoupment power with respect to disputed past wages. Indeed, the County Charter specifies a different regimen for the use of audits, which was not followed.
Article V, § C5-4 mandates that audits must be filed with the County Legislature. That section does not suspend all interim action until the Legislature approves or orders something to be done. In fact, the provisions contemplate that some action will be taken to implement the audit recommendations prior to any involvement of a legislative committee. However, section C5-4 envisions action by the "department head or elected official in charge of the department * * * which was the subject [of the] audit”. This department head must appear before the Legislature to explain "what actions have been taken to implement the recommendations, if any, of said auditor,” and if nothing has been done, to "give an explanation as to why such recommendations have not been implemented”. In the instant case, the employee’s department head did not act. Section C5-4 contemplates a recommendations role for the Comptroller. Here, the Comptroller leapfrogged to act *462 alone and circumvented the department head as well as the Legislature and implemented his own findings and "recommendations” by docking Mrs. Leirer’s pay, at an arbitrarily selected rate of 10% from presently earned wages as against alleged past due wages paid on certified payroll records.
We hold that statutory and common-law recoupment powers of the County Comptroller do not extend to the unilateral design and execution of a wage withholding regime to recoup purported salary overpayments under circumstances such as these when the basis for and amounts of the overpayments were never reduced to an established debt and when County Charter procedural rubrics have been ignored or bypassed.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the judgment of Supreme Court, Suffolk County, insofar as it is before us, reinstated.
Chief Judge Kaye and Judges Simons, Titone, Hancock, Jr., and Smith concur.
Order reversed, with costs, and judgment granted in accordance with the opinion herein.